In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 06-1922

MICHAEL F. JACKSON,

*Plaintiff-Appellant,*

*v.*

OFFICER KOTTER, *et al.,*

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 97 C 157—**John Daniel Tinder**, *Judge.*

_____

ARGUED APRIL 4, 2008—DECIDED SEPTEMBER 2, 2008

_____


Before POSNER, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. After suffering back injuries on two occasions while incarcerated at the United States Penitentiary in Terre Haute, Indiana, Michael Jackson brought a lawsuit against employees of the prison. He raised a negligence claim under the Federal Tort Claims Act (FTCA), *see* 28 U.S.C. § 2679, and constitutional claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Jackson amended his original complaint to

name the United States as the proper defendant of his
FTCA action, but the district court dismissed the claim
against the United States because the amendment was
filed after the applicable six-month statute of limitations
specified in 28 U.S.C. § 2401(b)(1). Jackson appeals the
district court's dismissal of the United States, as well as
the district court's dismissal of three individual defen-
dants; its grant of summary judgment in favor of Physi-
cian's Assistant ("P.A.") Williams, whom Jackson
alleged was deliberately indifferent to his medical needs;
its refusal to allow an amendment naming a new
defendant after the applicable statute of limitations had
expired; and its refusal to assist Jackson in securing
counsel. We affirm all of the district court's decisions
except for its dismissal of the United States of America
in the FTCA action, because Jackson's amendment
naming the United States related back to his original
pleading, which was timely filed. *See* Fed. R. Civ. P. 15(c).

## I. HISTORY

Jackson suffered injuries on two occasions while incar-
cerated at the Terre Haute penitentiary. On May 16, 1996,
the day Jackson was transferred to the facility, he fell
while walking across a freshly mopped floor. At the time,
Jackson was being escorted to his housing unit by four
officers—Bushy, Gregg, Robinson, and an unknown
individual—with his hands cuffed behind his back. The
officers walked behind Jackson and two other prisoners
as they cautiously crossed the wet floor, but according to
Jackson, the officers did not place their hands on the

inmates to help them maintain balance. Because his hands were cuffed behind his back, Jackson was unable to break his fall when he slipped, and he landed "full force" on the concrete floor. As Jackson laid on the floor, one officer ordered him to get up. Another officer grabbed Jackson's cuffs and arms to help him to his feet. As he was being helped up, Jackson began experiencing back pain, which worsened after the officers left the area. Jackson had difficultly sitting and bending over, and the stretches he attempted provided him no relief. Jackson was seen by a physician's assistant and given pain medication. When the pain did not subside, Jackson was taken for an x-ray and referred to orthopedics. He did regular exercises and took medication for the pain for a prolonged period (at least until December 16, 1997).

A second incident occurred on October 8, 1996, when Jackson was escorted out of his cell for a strip search. The details of this incident are not at issue in this appeal, so a condensed version of the facts will suffice. Jackson alleged that Officers Kotter and Grenier, and Counselor Rodriguez, used excessive force in violation of the Eighth Amendment by pressing him against a window, dragging him down the hall, ramming him against walls, and dragging him down a stairway. Jackson also alleged that a lieutenant watched the guards as they did these things, and failed to intervene.

Later that day or early the next morning (Jackson's affidavit suggests it was the same day, but prison medical records indicate it was the following morning at 7:30 a.m.), Jackson talked with P.A. Williams during Williams's

medical rounds. Jackson says he told Williams about his back and the incident with the guards, and explained to Williams that he needed an x-ray. Jackson alleges that Williams told him that nothing was wrong with his back, and refused to give Jackson the pain medication he took on a daily basis for his back pain.

Having not received the medical treatment he desired, Jackson purposefully clogged his toilet and flooded his cell. Jackson told an officer that he was causing trouble in an attempt to get medical attention. P.A. Williams then returned to Jackson, provided him with pain medication, and according to Jackson, was "trying to act concerned."

Shortly thereafter, Jackson was taken to get an x-ray of his spine. The accounts vary regarding the date of the x-ray—Jackson says it was the next day, but prison medical records indicate that it occurred on October 18. The x-ray showed "no evidence of any recent fracture or any destructive bone disease."

On June 3, 1997, Jackson brought a lawsuit against numerous defendants, raising three distinct grounds for relief. First, in an FTCA claim, Jackson alleged that, on May 16, 1996, Officers Bushy, Gregg, Robinson, and "John Doe" negligently led him across a wet floor while his hands were cuffed behind his back, allowing him to fall. Second, Jackson alleged that Lieutenant John Doe #2, Officers Kotter and Grenier, and Counselor Rodriguez violated the Eighth Amendment on October 8, 1996, by beating him and dragging him with deliberate indifference, causing harm to his back and right leg. Jackson's final count was against P.A. Williams for knowingly and

intentionally, with deliberate indifference, denying Jackson's medical needs after the October 8 incident, in violation of the Eighth Amendment.

On June 24, 1997, the district court dismissed the claims against Officers Bushy, Gregg, and Robinson for the May 16 incident, because the officers were not proper defendants under the FTCA. *See* 28 U.S.C. § 2679(b)(1). The district court instructed Jackson that he would have 30 days to amend his complaint to name the United States as the proper FTCA defendant. Jackson complied with the court's instruction by filing a First Amended Complaint on July 23, 1997. The district court first reinstated Jackson's FTCA claim against the United States, but then later decided that Jackson's amended complaint against the United States was time-barred because it was filed more than six months after the date Jackson had exhausted his administrative remedies under the FTCA. *See* 28 U.S.C. § 2401(b). Jackson missed the FTCA deadline by nine days.

The district court also denied Jackson's request to amend his complaint to specify and name Lieutenant Canada in the place of John Doe #2. For some time, Jackson believed that Lieutenant "Brickbuild" was the lieutenant who witnessed the October 8 incident. That person—actually Lieutenant Brechbill—later proved that he was not present at the scene. By the time Jackson learned the proper identity of the lieutenant—Canada—the statute of limitations period had expired for bringing a *Bivens* claim against him. The district court did not grant Jackson's motion to add Lieutenant Canada as a

defendant because the amendment would have been futile in light of the court's duty to dismiss the untimely claim. *See* 28 U.S.C. 1915A(b).

Throughout his litigation in the district court, Jackson asked the court to appoint an attorney to represent him. His first request was denied because he had not demonstrated to the court that he had made an effort to retain an attorney from the private bar. Thereafter, Jackson attempted to secure an attorney, to no avail. He renewed his request for counsel, but the district court again denied his request. The court stated that Jackson's claims were not of sufficient complexity such that they surpassed Jackson's ability to properly develop and litigate them. Several times after that ruling, Jackson requested appointed counsel but the district court also denied those requests. The court reiterated that Jackson appeared to be "fully capable of presenting his claim."

Ultimately, Jackson represented himself throughout the entire case. He served requests for production of documents and interrogatories; obtained copies of medical records; filed affidavits in response to notices that the defendants' factual assertions would be accepted as true unless contradicted by Jackson; filed his own motion for summary judgment; and succeeded in withstanding Officer Kotter and Counselor Rodriguez's motion for summary judgment.

After waiving a jury trial, Jackson represented himself during a bench trial on his excessive force claims against Kotter and Rodriguez, the remaining defendants. He made an opening statement and called as witnesses

Kotter, Rodriguez, and his own parents. He cross-exam-
ined the government's witnesses, which included Kotter
and Rodriguez. Jackson successfully had deposition
testimony of two of his prisonmates admitted into evi-
dence. Ultimately, the district court made factual findings
that Kotter and Rodriguez did not apply excessive force
on October 8, 1996, and concluded that Jackson had
failed to demonstrate by a preponderance of the evi-
dence that his federally secured rights were violated.
Jackson appealed, and we appointed an attorney to
represent him.

## II. ANALYSIS

On appeal, Jackson claims that the district court improp-
erly dismissed Officers Bushy, Gregg, and Robinson,
who, Jackson argues, were defendants in his *Bivens*
action—not just defendants in his FTCA claim. He also
argues that the district court abused its discretion by
dismissing the FTCA claim against the United States, and
by refusing to allow Jackson to add Lieutenant Canada as
a defendant after the statute of limitations period had
ended. Additionally, Jackson challenges the district
court's grant of summary judgment in favor of P.A.
Williams, and the district court's denial of his repeated
requests for appointed counsel.

### A. *The district court's dismissal of defendants Bushy, Gregg, and Robinson*

The district court dismissed Officers Bushy, Gregg, and
Robinson on the grounds that they were improper FTCA

defendants. *See* 28 U.S.C. § 2679(b)(1). Jackson argues that his complaint stated a constitutional *Bivens* claim against these individuals, *see* 403 U.S. at 389, in addition to an FTCA claim.

We review the district court's dismissal of claims against these defendants *de novo*, *see Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1108 (7th Cir. 1999), accepting well-pled factual allegations as true and construing all reasonable inferences in favor of Jackson, *see Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

The only proper defendant in an FTCA action is the United States. *See Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) ("[T]he United States . . . would be the proper defendant for tort claims involving acts of the named officials within the scope of their employment."); *Stewart v. United States*, 655 F.2d 741, 742 (7th Cir. 1981) ("Plaintiff has no cause of action . . . [under the FTCA] against an employee, her exclusive remedy being an action against the United States."); *see also* 28 U.S.C. § 2679(b)(1).

Jackson argues on appeal that he also sued Bushy, Gregg, and Robinson pursuant to a *Bivens* action—but the original complaint belies this argument.[1] Even though Jackson wrote the words "'*Bivens*' action" at the top of the com-

---

[1] We refer to the original complaint for this argument because the district court dismissed the claims against these three defendants before Jackson's second amended complaint and specifically instructed Jackson to "omit from that document the claims which have been determined through this Entry to be legally insufficient." In his first amended complaint, Jackson did not bring FTCA claims against the individual defendants.

plaint, the facts he pled relating to these three defendants and the legal grounds for relief sounded entirely in negligence. He stated the "act of negligence" of these defendants "violated a nondiscretionary for which the FTCA provides redress." He later stated that he was "knowingly and intentionally escorted across a wet floor, *in a negligent manner*, by defendants officers Bushy, Gregg[,] Robinson, and John Doe." (emphasis added). Admittedly, Jackson did list these three defendants in a section of his complaint titled "Name and Address of Individual(s) You Allege Violated Your Constitutional Rights," but nowhere in the complaint does he identify a constitutional right that the three defendants violated. The complaint demonstrates that Jackson understood the difference between negligence claims and constitutional *Bivens* claims, but chose to raise only negligence claims against Bushy, Gregg, and Robinson. With respect to the other individual defendants, Jackson stated that they had acted with "deliberate indifference" "in violation of the Eighth Amendment."

Perhaps most tellingly, however, is Jackson's own classification of his legal claim for the May 16 incident in his later filings. In a document titled "Further Opposition to Entry Discussing Selected Matters," Jackson stated that the May 16 incident "was a negligence act but a very serious one." Then, in a "Statement of Genuine Issues," Jackson refers to "the negligence act that happened on May 16, 1996 when plaintiff fell."

Jackson did not raise a *Bivens* claim against these three defendants in his original complaint—nor did he try to

reassert one in his amended complaint. The district court correctly dismissed the claims against Officers Bushy, Gregg, and Robinson because they were improper defendants under the FTCA.

## B. *The district court's dismissal of the United States*

Jackson next argues that the district court erred by dismissing his FTCA claim against the United States as untimely. Jackson acknowledges that he added the United States as a party to his suit more than six months after the denial of his claim for administrative relief. *See* 28 U.S.C. § 2401(b). But Jackson argues that his substitution of the United States as a party related back to his original complaint, *see* Fed. R. Civ. P. 15(c), which was filed before the six-month statute of limitations had expired.

Federal Rule of Civil Procedure 15(c)(1)(A) provides that an amendment will relate back to the original pleading if, first, "the law that provides the applicable statute of limitations allows relation back." The FTCA does not specifically address relation back of amendments, but it clearly prohibits actions "begun" after the statute of limitations period: "A tort claim against the United States shall be forever barred . . . unless action is begun within six months after . . . notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Because the FTCA effects a waiver of the United States's sovereign immunity, *see United States v. Olson*, 546 U.S. 43, 44-45 (2005*)*, we must be sure that relation back of FTCA claims filed outside the statutorily prescribed period does not infringe on the government's baseline immunity

from lawsuits brought against it by private parties, *see United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

The district court decided that the six-month window in the FTCA constituted a jurisdictional bar that could not be altered, and accordingly dismissed Jackson's FTCA claim against the United States. At first glance, the district court's inclination seems sound in light of "the traditional principle that the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged . . . beyond what the language requires." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34 (1992) (internal citations and quotation marks omitted). Bearing that principle in mind, the district court apparently attempted to strictly construe the government's waiver to include only suits properly naming the United States within the six-month limitations window. But recent Supreme Court caselaw concerning the relation-back doctrine (handed down after the district court's decision) suggests that Jackson's amendment, having met the requirements of Rule 15(c), should have been allowed.

In *Scarborough v. Principi*, the Supreme Court confronted a litigant's pleading mistake that the government argued implicated the government's waiver of sovereign immunity. 541 U.S. 401, 405-06 (2004). After prevailing on the merits in an action against the Department of Veterans Affairs, Scarborough filed a timely application to receive fees from the government for his litigation costs. *Id.*

However, in his application for fees, Scarborough mistakenly failed to allege that "the position of the United States was not substantially justified"—a requirement under the statutory fee award provision. *Id.*; *see also* 28 U.S.C. § 2412(d)(1)(A). By the time Scarborough rectified his mistake, the 30-day fee-application period had lapsed, so the Supreme Court had to decide whether the late amendment could cure the original, defective pleading. *Scarborough*, 541 U.S. at 412-13.

Citing two earlier relation-back cases, *Becker v. Montgomery*, 532 U.S. 757, 767-78 (2001), and *Edelman v. Lynchburg College*, 535 U.S. 106, 109 (2002), the Supreme Court decided in *Scarborough* that the amendment related back to the original, timely filed fee application. *Scarborough*, 541 U.S. at 411-12, 415-19. In *Becker*, the Court had decided that a late signature on a *pro se* litigant's notice of appeal related back to the original filing, allowing the appeal to proceed on the merits. 532 U.S. at 767-68. And in *Edelman*, the Court had upheld an EEOC regulation that allowed a late amendment to a discrimination charge—after the filing period—to cure the defect of an omitted verification. 535 U.S. at 109. The *Scarborough* Court explained that the relation-back doctrine allowed the amendment because the amendment "'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth' in the initial application"—that is, it met the requirements under the then-current version of Federal Rule of Civil Procedure 15(c). 541 U.S. at 418-19 (quoting Fed. R. Civ. P. 15(c)(2)).

The government argued in *Scarborough* that allowing deviation from the statutorily prescribed deadline by

way of the relation-back provision of the Federal Rules would infringe on the government's sovereign immunity. 541 U.S. at 420. In response to this argument, the Court reminded the government that it had already decided that equitable-tolling principles "applicable to suits against private defendants should also apply to suits against the United States." *See id.* at 420-21 (discussing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990), and *Franconia Assocs. v. United States*, 536 U.S. 129, 144-45 (2002)). In the same vein, the Court decided that relation-back principles that apply to litigation between private parties also apply to litigation between a private party and the United States. *Id.* at 421 ("Once Congress waives sovereign immunity, . . . judicial application of a time prescription to suits against the Government, in the same way the prescription is applicable to private suits, 'amounts to little, if any, broadening of the congressional waiver.' " (quoting *Irwin*, 498 U.S. at 95)).

We believe that this Supreme Court precedent applies with equal force to the judicial application of Federal Rule 15(c) to an FTCA action against the United States. Therefore, assuming Jackson's amendment meets the other relation-back requirements of Rule 15(c), his claim is not jurisdictionally barred even though his amendment occurred outside the six-month statute of limitations period.

The second requirement under Rule 15(c)(1) for relation back is that the amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the

original pleading." Fed. R. Civ. P. 15(c)(1)(B). This requirement is obviously met—the amendment substituting the United States arose out of the same facts alleging negligence for which Jackson brought suit against the individual officers.

The third requirement is that "the party to be brought in . . . (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed R. Civ. P. 15(c)(1)(C). The notice portion of this requirement is met as well. Both the Attorney General and the United States Attorney's Office received copies of the summonses that erroneously named the individual officers as defendants to Jackson's FTCA action on July 7, 1997, well within the service period prescribed by Federal Rule of Civil Procedure 4(m), and within the six-month statute of limitations period of 28 U.S.C. § 2401(b).

As for the mistake requirement of Rule 15, we questioned at oral argument whether Jackson's legal mistake—naming the wrong *type* of defendant—precluded application of the relation-back doctrine. Jackson's mistake could be likened to a "lack of knowledge" about the defendant, which we held in *Worthington v. Wilson*, would not provide grounds for relation back. 8 F.3d 1253, 1257 (7th Cir. 1993). But our holding in *Worthington*, which we have since applied on numerous occasions, *see King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir. 1998); *Eison*

*v. McCoy*, 146 F.3d 468, 471-72 (7th Cir. 1998), was that plaintiffs cannot, after the statute of limitations period, name as defendants individuals that were unidentified at the time of the original pleading. Not knowing a defendant's name is not a mistake under Rule 15.

On the other hand, it seems that the legal mistake Jackson made (which appears to be somewhat of a common mistake, *see e.g., Kaba v. Stepp*, 458 F.3d 678, 687-88 (7th Cir. 2006); *Ezekiel v. Michel*, 66 F.3d 894, 895 (7th Cir. 1995); *Moore v. U.S. Postal Service*, No. 95-1021, 1995 WL 632365, at *1 (7th Cir. Oct. 16, 1995) (unpublished table decision)) is the very type of mistake Rule 15 contemplates. We have explained that "a legal mistake concerning whether to sue an institutional or individual defendant brings the amendment within the purview of Rule 15 . . . ." *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 557 (7th Cir. 1996). Likewise, our decisions in *Hughes v. United States*, 701 F.2d 56, 58-59 (7th Cir. 1982), and *Stewart v. United States*, 655 F.2d 741, 742 (7th Cir. 1981), imply that so long as the United States receives actual notice within the six-month limitations period for commencement of an FTCA lawsuit, the identification of the United States as the proper FTCA defendant after the six-month period would relate back to the timely filed action—assuming the other Rule 15(c) requirements are met.

We abide by our own precedent and follow the direction of the Supreme Court in concluding that the relation-back doctrine of Rule 15(c) applies to FTCA suits against the United States. The United States was not prejudiced by

Jackson's amendment because it received actual notice within the statutory six-month time period that, but for Jackson's mistake, it was the intended defendant in his FTCA claim. Jackson's amendment related back under Rule 15(c), so the district court erred by dismissing his claim against the United States.

C. *The district court's grant of summary judgment in favor of Williams*

The district court granted P.A. Williams's motion for summary judgment because Jackson proffered no evidence demonstrating that Williams's actions may have amounted to deliberate indifference to Jackson's medical needs. We review the grant of summary judgment *de novo*, and "draw all reasonable and justifiable inferences in favor of the non-moving party," Jackson. *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Jackson's description of his interactions with Williams after October 8 contained in his complaints and his evidentiary affidavits differs from the prison's medical records. But even with the inconsistencies, Jackson's version of the events does not support a claim for deliberate indifference to his medical needs.

For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make

a decision that represents " 'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.' " *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collingnon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Jackson claims that P.A. Williams violated his Eighth Amendment rights by refusing to treat him following his injury on October 8, 1996. In his second amended complaint, Jackson stated that he requested medical attention in the afternoon, and "after a long while," Williams came to his cell while making medical rounds. Jackson allegedly explained to Williams that he "needed medical attention," but he claims that "Williams refused to give Plaintiff medical attention." Jackson later stated in the complaint that Williams had a duty under United States law "to administer proper medical treatment to Plaintiff" and that Williams "denied Plaintiff medical attention."

Jackson was incorrect in his recitation of Williams's duty—medical professionals are not required to provide "proper" medical treatment to prisoners, but rather they must provide medical treatment that reflects "professional judgment, practice, or standards." *See Sain*, 512 F.3d at 895. There is not one "proper" way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. *See Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment.");

*see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . ."). A medical professional's treatment decisions will be accorded deference "unless 'no minimally competent professional would have so responded under those circumstances.' " *Sain*, 512 F.3d at 895 (quoting *Collignon*, 163 F.3d at 988).

Jackson submitted an affidavit in which he further detailed his interactions with Williams. He stated that he complained to Williams when Williams was conducting his medical rounds after the October 8 incident. Jackson does not specify the actual date of his first meeting with Williams following the October 8 incident, but states that it was "later." The prison medical records show that the interaction happened on October 9 at 7:30 a.m. Jackson claims that Williams told him nothing was wrong with his back, and that Williams refused him his medication. In order to get somebody's attention, Jackson flooded his toilet. Williams returned later that day with Jackson's medication and was "trying to act concerned." In another filing, Jackson explained that when Williams came back to give him medication, Williams "rudely threw [it] around, but at the same time act[ed] concerned and left quickly." Jackson stated that the next morning he was taken to get an x-ray by Physician's Assistant Smith.

Accepting Jackson's version of the events as true, there is not a genuine issue of material fact surrounding this claim. *See Jones v. Union Pacific R. Co.*, 302 F.3d 735, 744 (7th Cir. 2002) ("[W]e do accept [the plaintiff's] version of the facts as true . . . ."). Assuming without deciding that Jackson's back pain presented a sufficiently serious medical condition warranting attention from prison officials, *see Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (discussing *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)), Jackson's own averments about Williams's actions following the October 8 incident quell his deliberate indifference claim. As in *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997), "at most [Jackson] experienced an isolated occasion or two where he did not receive prompt treatment."

Williams saw Jackson shortly after his alleged injuries and ordered an x-ray for Jackson, which took place on either October 9 or 10 (as Jackson alleged), or on October 18, 1996 (as the prison medical records show). Jackson does not contest that Williams personally observed his condition, and took into consideration prior x-rays of Jackson's spine and the report of an orthopedic surgeon who had previously assessed Jackson. Williams afforded Jackson some of the treatment that he demanded—pain medication the same day it was requested and an x-ray shortly thereafter. Williams decided that, based on Jackson's account of his pain and Jackson's medical history, an MRI and a referral to an orthopedic surgeon were not appropriate. "What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular man-

ner." *Snipes*, 95 F.3d at 591; *see also Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). The district court did not err in granting Williams's motion for summary judgment.

D.  *The district court's denial of Jackson's motion to add Lieutenant Canada as a defendant*

At the time of his original complaint, Jackson had not determined the name of "Lt. John Doe #2." Jackson claimed that this person provided permission for, and failed to intervene in, the incident in which Officers Kotter and Grenier, and Counselor Rodriguez, allegedly beat Jackson and dragged him down stairs. In his second complaint, Jackson had identified John Doe #2 as Lieutenant "Brickbuild." He averred that Brickbuild was part of the cohort of individuals that harmed him "in a concerted act" by beating and dragging him down the stairs while he was handcuffed, and slamming him into walls and doorways.

Several months after Jackson filed his amended complaint, it became clear that "Brickbuild" was actually Lieutenant Brechbill. And shortly therafter it was learned that Brechbill was not personally involved in the incident. Eventually, Jackson learned the real name of the intended defendant—Lieutenant Canada. But by that time, the two-year statute of limitations for the *Bivens* claim had expired. *See Bailey v. Faulkner*, 765 F.2d 102, 103 (7th Cir. 1985) ("The state statute of limitations that the federal courts must borrow in a section 1983 suit is the statute of limitations for personal-injury suits, which is two years in Indiana." (internal citations omitted)); *Lewellen*

*v. Morley*, 875 F.2d 118, 119 (7th Cir. 1989) ("Suits under *Bivens* must meet the same schedule.").

Jackson argues that his amendment adding Canada's name should have related back to the original complaint. He cites *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 557 (7th Cir. 1996), for the proposition that his failure to name this particular individual defendant was a "mistake" about the individual's identity. We addressed an argument like this in *King v. One Unknown Federal Correctional Officer*, and explained that reliance on *Donald* is misplaced in this type of situation. 201 F.3d 910, 914 (7th Cir. 2000). In *Donald*, the district court abused its discretion by not helping the plaintiff differentiate between the proper *type* of defendant in a § 1983 action—that is, individuals as opposed to government entities. 95 F.3d at 557. *Donald* did not change our stance on actions against unknown defendants: "We have consistently held that Rule 15(c)(3) does not provide for relation back under circumstances, such as here, in which the plaintiff fails to identity the proper party." *King*, 201 F.3d at 914.

Jackson argues that the United States employed "dilatory" tactics throughout discovery to prevent Jackson from learning Canada's identity within the statute of limitations period, but the record does not support his claim. The government was not asked about the identity of John Doe #2 until October 13, 1998, which was already beyond the two-year statute of limitations period for Jackson's *Bivens* claim—Jackson's cause of action against Lieutenant Canada accrued on October 8, 1996. His claim against Canada does not relate back because Jackson

simply failed to identify the proper defendant, as opposed to mistaking the type of defendant (*i.e.*, institutional or individual) or mistaking, misspelling, or otherwise confusing, the defendant's name.

*E. The district court's denial of Jackson's requests for counsel*

Jackson repeatedly requested the court's assistance in attaining counsel, and the district court repeatedly denied his requests because, in the court's view, Jackson's legal claims against the defendants were not sufficiently complex and Jackson was capable of developing and litigating the claims himself. The court explained that "the presence of counsel would not make a difference in the outcome."

We review a district court's decision not to assist a litigant in obtaining counsel for an abuse of discretion. *See Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). Jackson had no constitutional or statutory right to counsel in his civil case against the government and its employees. *See Johnson v. Doughty*, 433 F.3d 1001, 1019 (7th Cir. 2006). The decision of whether to recruit *pro bono* counsel for Jackson—or, as it is often called, to "appoint counsel"—rested within the sound discretion of the district court. *See Pruitt*, 503 F.3d at 653-54; *Johnson*, 433 F.3d at 1019. As part of its exercise in discretion, the district court was required to consider both "the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself*." Pruitt*, 503 F.3d at 655.

In determining whether the district court abused its discretion, we do not engage in an independent analysis

of the plaintiff's claims and competency in order to decide for ourselves whether we think the plaintiff needed counsel. *Id.* at 658-59. Instead, we determine whether the district court applied the correct legal standard, and whether the court's ultimate conclusion was reasonable given the information available to the court at the time the decision was made. *Id.* "'We ask not whether [the judge] was right, but whether he was reasonable.'" *Id.* at 659 (quoting *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)).

The district court applied the proper legal standard when assessing Jackson's requests. In response to Jackson's first request, the court correctly explained that a request for appointment of counsel will be considered by the court only after the plaintiff has made reasonable efforts to obtain counsel from the private bar. *See id.* at 654; *Gil v. Reed*, 381 F.3d 649, 658 (7th Cir. 2004) ("[T]he threshold consideration in determining whether to appoint counsel is whether the inmate has attempted and failed to procure counsel on his own . . . ."). Jackson again requested the court's assistance because, after reasonable efforts, he was unable to secure counsel himself.

The court then addressed the substance of Jackson's request by assessing the complexity of Jackson's claims, and his ability to litigate his claims. *See Pruitt*, 503 F.3d at 655. The court denied Jackson's request because his claims were not "of sufficient complexity or merit as [to] surpass the plaintiff's ability to properly develop and present them in this action." It is evident that the district court undertook an inquiry into both the types of claims

raised, and Jackson's ability to litigate such claims. Because it applied the correct legal standard, our only task now is to decide whether the district court's decision was reasonable. *Id.* at 658-59.

Given the evidence before the district court at the time of Jackson's requests, *see id.* at 659, the decision not to recruit counsel was reasonable and thus, not an abuse of discretion. "This case was not overly difficult." *Johnson*, 433 F.3d at 1007. Jackson had filed two acceptable complaints, save for the misidentification of the proper FTCA defendant (a mistake that others have made and for which Jackson is getting relief on appeal). His claim against Williams did not survive summary judgment, but not for lack of his own abilities or the complexity of the claim. Jackson simply did not have a claim against Williams because none of the facts he alleged demonstrated deliberate indifference on Williams's part—an attorney could not have refashioned his meritless claim into a meritorious one. *See Snipes*, 95 F.3d at 592-93 ("The presence of counsel would not have made a difference in the outcome of this case. . . . From the beginning this was at best a suit for medical malpractice and negligence, not a plausible action for violation of constitutional rights.").

Jackson's claims against the prison officials for excessive force survived summary judgment because Jackson sufficiently alleged facts establishing a genuine issue of material fact about the officials' behavior on October 8. Jackson demonstrated competence both in his preparation for trial and in his presentation of his case to the district court at trial. Jackson's submissions to the district court were coherent and organized, as were his requests for

documents and interrogatories. And although this case involved "an issue of medical treatment, it [did] not involve technical facts." *Forbes v. Edgar*, 112 F.3d 262, 264 (7th Cir. 1997). Jackson was able to testify about his own injuries, and he successfully secured medical records that were not overly complex. Jackson submitted exhibits for trial, including a prison disciplinary record, a medical history report, and a medical classification report.

At the bench trial, even though Jackson conflated his testimony with his opening statement, the district court treated his statement as testimony. Jackson took direct testimony from several witnesses, and conducted cross-examination of the government's witnesses. Further, Jackson successfully entered the deposition transcripts of two other inmates into evidence. Unlike the situation in *Pruitt*, where the plaintiff's "incompetent preparation and presentation" of his case may have affected the outcome and led the jury to believe the defendants' testimony over the ill-prepared plaintiff's, *Pruitt*, 503 F.3d at 661, Jackson was prepared for his trial and performed satisfactorily throughout. The district court explained that Jackson "demonstrated familiarity with the facts and circumstances he intended to establish to prove his claim, and with the legal principles involved in doing so." The district court as the fact-finder ultimately credited the testimony of the prison officials over Jackson's.

Jackson argues that had he been appointed counsel, the attorney would have ensured timely filing of the amended FTCA claim, requested initial disclosures and

a scheduling order, deposed the defendants' witnesses, hired an expert, conducted FOIA requests, and ensured a more speedy trial. And Jackson is probably correct in believing that his "case might have improved had he been represented by counsel." *Johnson*, 433 F.3d at 1008. "However, just because counsel might have added opportunities to improve the presentation of [Jackson's] case does not mean that the case itself was so overly complex that counsel was required. Furthermore, speculating about how counsel might have done a better job prosecuting the case is neither necessary nor appropriate." *Id.* at 1008-09.

The only time we will reverse a district court's refusal to appoint counsel for abuse of discretion is when that refusal resulted in a "fundamental unfairness infringing on due process rights*." Gil*, 381 F.3d at 657 (internal quotations omitted). The district court's decision to not request counsel for Jackson did not result in a fundamental unfairness, because Jackson was able to competently litigate the straightforward claims he brought against the defendants.

### III. CONCLUSION

The district court's dismissal of the FTCA claim against the United States is REVERSED, and that claim is REMANDED to the district court for further proceedings. The district court's remaining judgments are AFFIRMED.