NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2012[*]
Decided January 7, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1808

| | |
|---|---|
| ROBERT CHAMBERS, | Appeal from the United States District |
|    *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
|    *v.* | |
| | No. 2:10-cv-12-WTL-MJD |
| MICHAEL MITCHEFF and | |
| ALFRED TALENS, | William T. Lawrence, |
|    *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Robert Chambers, an inmate at the Wabash Valley Correctional Facility in Indiana, claims in this action under 42 U.S.C. § 1983 that two prison doctors were deliberately

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

indifferent to his complaints of abdominal pain. The district court granted summary judgment for the defendants, reasoning that the evidence of the care they had provided Chambers negated any inference of deliberate indifference. We affirm the judgment.

At summary judgment the parties' statements of undisputed facts, together with their affidavits and Chambers's medical records, told the following story: Dr. Alfred Talens first examined Chambers for complaints of abdominal pain on May 8, 2008. He concluded that Chambers was constipated and prescribed laxatives and a stool softener. Dr. Talens also ordered a fecal occult blood test. When Chambers returned to Dr. Talens a few weeks later and said that the pain had spread to his groin, Dr. Talens also recommended an increase in fluids and activity level. In June 2008 Chambers informed Dr. Talens that the laxatives were not helping his pain. Dr. Talens ordered an abdominal x-ray, which confirmed that Chambers was constipated and showed no sign of intestinal obstructions or calcifications.

The results of the fecal occult blood test were received the next month and showed blood in some of Chambers's stool. On that basis Dr. Talens requested an air contrast barium enema. (An air contrast barium enema is used to diagnose colon cancer, diverticulitis, and inflammatory bowel disease. *See* United States National Library of Medicine, Medline Plus, http://www.nlm.nih.gov/medlineplus/ency/article/003817.htm (last visited Oct. 22, 2012).) Dr. Michael Mitcheff, the Regional Medical Director, denied that request in favor of conducting additional tests of Chambers's stools to confirm the need for an enema. Dr. Talens then ordered a fecal occult blood test each week for the next month, and all were negative. Yet when Chambers returned to Dr. Talens in August complaining of left upper abdominal pain and mucous in his stools, Dr. Talens submitted another request for an air contrast barium enema. Dr. Mitcheff again decided that the procedure would be premature and recommended performing a digital rectal examination or an anoscope before resorting to an air contrast barium enema.

Dr. Talens examined Chambers again in September 2008 for intermittent left abdominal pain. After noting that Chambers's stools were negative for blood and his anus appeared normal, Dr. Talens recommended a warm compress, an increase in physical activity, and more fluids. Later that month Chambers returned with the same complaint of abdominal pain, which prompted another check for blood in his stools. In October 2008 Chambers reported that his abdominal pain had subsided and his bowel movements had become more regular, but in January 2009 he complained that the pain had returned and that he was seeing some blood in his stools. Dr. Talens ordered two more fecal occult blood tests, both again negative. He repeated his recommendation that Chambers increase his fluid intake but added that he could not do anything more at that time.

Chambers began seeing a different prison doctor in March 2009. That physician opined that Chambers's abdominal pain most likely was caused by irritable bowel syndrome and prescribed a saline laxative. A month later that doctor noted that a physical examination was negative for hernias. In June the physician—again noting that Chambers did not have a palpable hernia—requested a CT scan of Chambers's abdomen and pelvis, which Dr. Mitcheff approved. The results were unremarkable except for the possibility of a small amount of free fluid in the pelvis. In September 2009 the physician once again examined Chambers for hernias, and found none. Chambers continued to complain of abdominal pain, however, so Dr. Mitcheff now authorized the air contrast barium enema. The results, which were received in March 2010, did not show any abnormalities. When Chambers reported scrotal pain in June 2010, Dr. Mitcheff approved a testicular ultrasound, the results of which were normal.

In August 2010 Dr. Mitcheff approved a request from yet another prison physician that Chambers have a colonoscopy. Doctors in the endoscopy unit of a private hospital removed a small, benign polyp from Chambers's colon and opined that the polyp was not the cause of his constipation or abdominal pain. Otherwise the colonoscopy was normal. In October 2010 Chambers had a follow-up appointment with still another prison physician, Dr. Harry Stoller, who is not a defendant. He observed that Chambers was experiencing tenderness in the left femoral canal. Dr. Stoller speculated that Chambers might have a femoral hernia and stated that he would request a surgical consultation. (The record does not show whether the consult was ever requested.)

Dr. Talens resumed treating Chambers in January 2011. At their first meeting Chambers informed Dr. Talens that the physician who saw him the previous October had said he possibly had a hernia.  According to Chambers, Dr. Talens replied that he agreed with his colleague and that Chambers did have a femoral hernia. Dr. Talens denies, however, that he or any other prison doctor ever diagnosed Chambers with a hernia. Dr. Talens did order an x-ray of the abdominal cavity, but the results did not show a hernia. The next month Dr. Talens also ordered another CT scan, the results of which were normal. Even so, several weeks later Dr. Talens—noting Chambers's "long history of pain and discomfort of the left inguinal area" and the lack of explanation for his pain—took the additional step of requesting a surgical consultation to determine whether Chambers had a hernia. Dr. Mitcheff received that request and agreed that the consultation was warranted. A general surgeon at a private hospital then examined Chambers in April 2011 but concluded that he did not have a hernia. When Chambers next met with Dr. Talens in May 2011, he told the physician that a surgical resident who was present with the general surgeon had diagnosed a hernia but the general surgeon disagreed. Dr. Talens wrote in his progress notes that he would request another surgical consultation for a second opinion. That request is not documented in the evidence at summary judgment, but Chambers does

not contend that Dr. Talens failed to follow through before he retired later that same month. In fact, Chambers asserts that this request was made but denied by Dr. Mitcheff.

Chambers brought this § 1983 action alleging that Dr. Talens and Dr. Mitcheff were deliberately indifferent to a serious medical need by failing to adequately diagnose and treat his ongoing abdominal pain. Dr. Talens's treatment decisions, Chambers argued, constituted a substantial departure from professional judgment. And Dr. Mitcheff, he continued, was responsible for the lack of effective treatment because he repeatedly denied requests for outside consultations and tests. The district court concluded, however, that a jury could not reasonably conclude from the evidence that the two defendants had been deliberately indifferent to Chambers's abdominal pain. According to the court, Dr. Talens had responded appropriately to each of Chambers's complaints by prescribing medications and using diagnostic tools in an effort to discover the cause of his pain. Moreover, the court explained, Dr. Mitcheff had exhibited a pattern of approving—not denying—outside tests in an effort to diagnose the cause of Chambers's pain.

On appeal Chambers essentially contends that his evidence conclusively shows that he received wholly ineffective treatment for his abdominal pain. He also argues that a purported diagnosis of a femoral hernia obtained in anticipation of litigation establishes that Dr. Talens and Dr. Mitcheff denied him treatment for that condition. To sustain his Eighth Amendment claim, Chambers was required to show that he suffered from an objectively serious medical need and that the defendants were deliberately indifferent to that need. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006). Because the defendants do not dispute that Chambers's continuous abdominal pain qualifies as a serious medical need, our focus is on whether Dr. Talens or Dr. Mitcheff was deliberately indifferent to that pain, whatever its cause.

We begin with Dr. Talens. To show that Dr. Talens was deliberately indifferent, Chambers needed to establish that the doctor was aware of but intentionally or recklessly disregarded his serious medical need. *See Farmer*, 511 U.S. at 837; *Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008). Chambers argues that in 2008 and 2009 Dr. Talens knew that the treatment prescribed for constipation was not alleviating his pain, and yet the physician continued to provide ineffective treatment. We defer to a medical professional's treatment decisions "unless 'no minimally competent professional would have so responded under those circumstances.'" *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); *see Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). Chambers points to no evidence which might suggest that Dr. Talens's treatment plan in 2008 and 2009 was unreasonable; Dr. Talens examined Chambers multiple times, ordered an x-ray, attempted to treat his constipation with laxatives, fluids, activity, and compresses, and still requested further testing when Chambers's pain did not subside. The record shows that Dr. Talens's treatment of Chambers was grounded in professional

judgment and was reasonable. *See Jackson*, 541 F.3d at 698; *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006). Even if Dr. Talens was wrong, as long as he believed that his diagnosis was consistent with Chambers's symptoms and that he was providing appropriate treatment, he was not deliberately indifferent to Chambers's pain. *See Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

Chambers counters, though, that Dr. Talens diagnosed him with a hernia in January and February 2011 but failed to treat it. Chambers misreads the January and February 2011 treatment notes. Those notes, as well as Dr. Talens's affidavit, show that Dr. Talens planned to request outside testing *to determine whether* Chambers had a hernia. But even if we assume that Dr. Talens did say that Chambers had a hernia, as Chambers asserts, Dr. Talens could not have been deliberately indifferent simply by speculating *favorably* to Chambers. Additional testing was necessary to objectively confirm this speculation, and Dr. Talens requested an x-ray, a CT scan, and a surgical consultation. The x-ray and scan were negative for a hernia, and the general surgeon conducting the consultation did not find a hernia. Dr. Talens could have stopped right there, and yet when Chambers told him that a surgical resident at the consultation thought he did have a hernia even though the general surgeon did not, Dr. Talens said he would request another consultation for a second opinion. At most the facts show a difference of opinion by *other* medical professionals at a private facility, not any shortcoming by Dr. Talens. On the basis of this record, no reasonable juror could find that Dr. Talens was deliberately indifferent to Chambers's serious medical need. *See Duckworth v. Ahmad*, 532 F.3d 675, 681 (7th Cir. 2008) (concluding that doctor who knew there was risk of cancer but erroneously thought that another condition was more likely causing prisoner's symptoms was not deliberately indifferent); *Norfleet*, 439 F.3d at 396 (explaining that difference of opinion as to prisoner's arthritis amounted to, at most, medical malpractice, and was not a constitutional violation).

Chambers also failed to present evidence from which a jury might reasonably infer deliberate indifference by Dr. Mitcheff. Chambers argues that Dr. Mitcheff engaged in a pattern of denying doctors' requests to provide outside testing, but, on the contrary, Dr. Mitcheff approved several tests to determine the cause of Chambers's abdominal pain, including two CT scans, an air contrast barium enema, a testicular ultrasound, a colonoscopy, and a surgical consultation. Chambers presses that Dr. Mitcheff showed a reckless disregard for his symptoms by denying Dr. Talens's first two requests for air contrast barium enemas. But Dr. Mitcheff did not disregard Chambers's symptoms; he thought that the proposed procedure was premature and recommended that additional tests be conducted first. Every test conducted in the months that followed was negative, and yet Dr. Mitcheff approved a third request for an air contrast barium enema when all other avenues had been exhausted. A good-faith disagreement about the proper course of treatment will never prove deliberate indifference, *Norfleet*, 439 F.3d at 396; *Johnson*, 433 F.3d

at 1012–13, but in this case Chambers's contention is especially frivolous because the procedure that Dr. Mitcheff did not authorize more quickly itself came back negative.

Chambers goes on to assert that Dr. Mitcheff also denied two requests for surgical consultations—Dr. Stoller's request in October 2010 and Dr. Talens's request in May 2011—but there is no evidence that Dr. Mitcheff actually received those requests or that he denied them. More importantly, Dr. Mitcheff authorized the surgical consultation that Chambers received in April 2011; that consultation confirmed that Chambers did not have a hernia, which moots any argument that the earlier request even matters. And assuming Dr. Mitcheff received a request for a consultation in May 2011, denying a request for another consultation just one month after a general surgeon examined Chambers and determined that he did not have a hernia would not show reckless indifference to a serious medical need.

In addition, Chambers argues that Dr. Mitcheff knows that he has not received any treatment since May 2011 but has failed to intervene. This lawsuit was filed in 2010, however, and Chambers raised this allegation for the first time in his opposition to the defendants' motion for summary judgment. Even if that allegation is relevant to this case, Chambers failed to support it with any evidence that he requested and was denied medical attention from any prison doctor after May 2011. Dr. Mitcheff supervises prison physicians; he does not treat inmates, and Chambers has not shown that he has denied any requests to treat Chambers or that he otherwise has been personally involved in Chambers's care since May 2011. *See Knight v. Wiseman*, 590 F.3d 458, 462–63 (7th Cir. 2009); *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).

Chambers also points to the July 2011 affidavit of his medical expert, Dr. Richard Schultheis. He avers that Chambers "was recently diagnosed" with a femoral hernia and that, in his opinion, the failure to timely diagnose and treat that hernia fell below a reasonable standard of care. But Dr. Schultheis did not diagnose the hernia himself and does not say who did or when. All he says is that he formed an opinion that someone (he does not say who) was negligent. Femoral hernias are uncommon and are more likely to affect women than men. *See* United States National Library of Medicine, Medline Plus, *Femoral Hernia*, http://www.nlm.nih.gov/medlineplus/ency/article/001136.htm (last visited Oct. 17, 2012); The Merck Manual of Diagnosis and Therapy 102 (18th ed. 2006). Dr. Schultheis did not personally examine Chambers; he based his opinion entirely on specifically identified medical records, none of which include a hernia diagnosis.

As a final note, we find it troubling how long Chambers has waited for a correct diagnosis of the source of his abdominal pain. But neither an incorrect diagnosis nor a disagreement about the proper course of treatment alone is sufficient to show deliberate indifference. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Mingus v. Butler*, 591

F.3d 474, 480 (6th Cir. 2010); *Norfleet*, 439 F.3d at 396. And Chambers has failed to present evidence from which a jury might reasonably infer that Dr. Talens or Dr. Mitcheff disregarded his serious medical needs.

Accordingly, the judgment is **AFFIRMED**.