NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 6, 2014[*]
Decided February 10, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1931

| | |
|---|---|
| CURTIS L. WESTBROOK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 10 C 4161 |
| BOY SCOUTS OF AMERICA, | |
| *Defendant-Appellee.* | Robert M. Dow, Jr., |
| | *Judge.* |

**O R D E R**

Curtis Westbrook appeals the dismissal of his employment discrimination suit after the district court granted summary judgment to the Boy Scouts of America. We affirm the judgment.

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

We first note that the district court adopted as undisputed the facts submitted in the Boy Scouts' Local Rule 56.1 Statement of Material Facts because Westbrook did not file a response. We, too, adopt those facts in our review. See *United States v. Funds in the Amount of $30,670,* 403 F.3d 448, 454–55 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chicago,* 385 F.3d 1104, 1108–09 (7th Cir. 2004).

The Boy Scouts national holds a Congressional charter, see 36 U.S.C. § 309, but authorizes local councils to deliver its scouting program. The local councils, although separately incorporated, must abide by the national's bylaws, rules, and regulations. The local councils make staffing decisions independently, but they may not employ someone who does not hold a professional commission from the Boy Scouts.

Westbrook, a college graduate, was hired as a district executive in 1993 by Crossroads of America Council, a local council headquartered in Indianapolis, Indiana. In this position Westbrook worked with the volunteer board of directors and community leaders to recruit and train adult volunteers for local youth programs, promoted those youth activities, and served as a role model for student volunteers.

In June 1996 the State of Indiana charged Westbrook with residential entry, a felony, and two misdemeanors, battery and invasion of privacy. Those charges eventually were dismissed, but the underlying conduct served as the basis for Westbrook being held in contempt of court for violating a restraining order related to his divorce proceedings, and he was sentenced to 90 days in jail. That sentence was conditionally suspended, however, after Westbrook had served only a few days in jail. Meanwhile, after the criminal case had been filed, Crossroads notified Westbrook that it was investigating him because felonious conduct is a ground for termination. He was suspended immediately and then fired a month later, and he lost his professional commission from the Boy Scouts. In its discharge letter Crossroads explained that it may convert a suspension into termination if criminal charges are not resolved within 30 days, as was his case. Crossroads reminded Westbrook, however, that he could reapply for a commission from the Boy Scouts if the pending criminal charges were resolved in his favor, as they later were.

Since then Westbrook has tried unsuccessfully to regain his professional commission from the Boy Scouts. Most recently, in July 2008, Westbrook contacted the human resources director for the Boy Scouts asking to be reinstated. The next month the Boy Scouts notified him by letter of its conclusion that it was "not in the best interests" of the Boy Scouts "to grant you a professional commission."

Westbrook then submitted a charge with the Equal Employment Opportunity Commission alleging that the Boy Scouts had discriminated against him because he is black and, at that time, 49 years old. He also accused the Boy Scouts of retaliating against him for reporting to headquarters that Crossroads maintains "paper units," which Westbrook describes as scout troops existing only on paper. After receiving a right to sue letter, Westbrook filed this action in the northern district of Illinois.

Accompanying Westbrook's complaint were motions to proceed in forma pauperis and requesting counsel. The district court granted the IFP application but denied without prejudice Westbrook's request for counsel. The court concluded that enlisting counsel would be premature because it was too early to tell if Westbrook could capably litigate the case on his own. When Westbrook renewed his request at a status hearing a few months later, the court took the matter under advisement.

Six months into the litigation, in January 2011, the Boy Scouts moved to compel discovery because Westbrook still hadn't served his initial disclosures, see FED. R. CIV. P. 26(a)(1), or responded to any of its written discovery requests. The Boy Scouts had given Westbrook three extensions to respond before seeking court intervention. A magistrate judge convened a hearing; Westbrook failed to appear, and the judge granted the motion to compel.

The next week Westbrook wrote the court asserting that he lacked the financial resources to respond appropriately to the Boy Scouts' discovery requests and for a third time requested counsel, explaining that he did not understand how to navigate the litigation process. The district judge once again denied this request. The court reasoned that Westbrook personally possessed most of the requested materials and information and thus whether represented or not, he would need to collect documents and formulate responses on his own.

Although the discovery deadline had been extended numerous times, Westbrook still did not complete his responses to the Boy Scouts' discovery requests until many weeks after discovery had closed. The Boy Scouts asked the district court to sanction Westbrook under Federal Rule of Civil Procedure 37 and its inherent powers for failing to timely respond to its discovery requests and disregarding several court-ordered deadlines. The district court acknowledged Westbrook's efforts to comply with his discovery obligations but, nevertheless, concluded that those efforts had "fallen so far short of the mark, even for *pro se* litigants, that some sanctions are warranted." Noting

that Westbrook consistently had cited financial constraints to excuse his delays, the court declined to impose monetary sanctions. Instead, the court barred Westbrook from engaging in further discovery and limited his use of documents or witnesses that were disclosed late. The court also reopened discovery solely to allow the Boy Scouts to depose Westbrook, who then renewed his motion for counsel.

With that deposition in hand the Boy Scouts moved for summary judgment. After reviewing the motion and supporting materials, the district court denied Westbrook's latest request for counsel. The court reasoned that Westbrook had shown himself capable of presenting coherent arguments and concluded that his litigation problems resulted from his noncompliance with deadlines. Moreover, the court explained, the factual and legal premises of the Boy Scouts' motion were not difficult to understand, Westbrook's employment history was within his own knowledge, and the notice the Boy Scouts had provided according to Local Rule 56.2 adequately explained to Westbrook his obligations in responding to the motion for summary judgment.

In its motion for summary judgment, the Boy Scouts made several arguments, including that Westbrook had not submitted any direct evidence of discrimination and could not establish a prima facie case under the indirect method of proof. See *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). The day after it was due, Westbrook submitted his response to the Boy Scouts by e-mail (time stamped 5:28 p.m.), but did not file it with the district court. The Boy Scouts alerted the court to his late submission, moved to strike it, and provided the court with a copy. The court denied the motion to strike because Westbrook had never filed his response with the court, and so, the court reasoned, no response existed to strike. In then granting summary judgment for the Boy Scouts, the district court agreed with the defendant that Westbrook lacked evidence of race or age discrimination or retaliation under either method of proof.

Westbrook then timely moved for reconsideration under Federal Rule of Civil Procedure 59(e), arguing that the district court should have accepted his response opposing summary judgment. He contended that computer problems the day before that response was due had prevented him from timely submitting it. Westbrook added that he mailed the response to the court on July 25, 2012 (two days after the deadline) and attached receipts from the post office displaying that date. The court rejected that explanation, reasoning that Westbrook, as a pro se litigant, had been told how to respond to the Boy Scouts' motion and been given nearly three months to do so. Westbrook's untimeliness could not be excused, the court concluded, given those procedural precautions and his repeated failure to abide by deadlines throughout the

litigation. What's more, the court noted, Westbrook's receipts did not evidence that his response had been timely submitted.

On appeal Westbrook lists numerous claims, none of them addressing the merits of the grant of summary judgment. And only two of those claims—broadly construing his brief—are properly before us. Of those Westbrook principally argues that the district court wrongly denied his requests for recruited counsel. On Westbrook's view, his consistent noncompliance with deadlines and lack of success with the motions he filed should have alerted the court that he was incapable of litigating his case pro se.

The district court did not abuse its discretion in refusing to enlist counsel for Westbrook. See *Bracey v. Grondin*, 712 F.3d 1012, 1016 (7th Cir. 2013). In reviewing the court's decision, we look to whether the court applied the correct legal standard and acted reasonably. *Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008). The court, when it ruled initially, recited the correct legal standard, asking whether Westbrook had made a reasonable effort to obtain counsel and was capable of litigating his case. See *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) (*en banc*). At the time only Westbrook's complaint was before the court, and thus the judge reasonably concluded that recruiting counsel at that stage would be premature. See *Romanelli v. Suliene,* 615 F.3d 847, 852 (7th Cir. 2010). Then before declining Westbrook's second and third motions, the court reviewed the Boy Scouts' discovery requests and, again, reasonably concluded that Westbrook—the person in possession of the desired information and materials—was capable of responding without professional assistance. See *Pruitt,* 503 F.3d at 655 (explaining that district court's inquiry should "include the tasks that normally attend litigation" such as "evidence gathering, preparing and responding to motions and other court filings"). And finally, before rejecting Westbrook's fourth request for counsel, the court evaluated the factual and legal content of the Boy Scouts' motion for summary judgment and concluded that he was capable of addressing them. This decision was reasonable: Westbrook is college educated, he persuaded the court against imposing monetary sanctions for his discovery mishaps, and his case involves basic principles of employment discrimination law. See *Jackson,* 541 F.3d at 700–01 (concluding that district court reasonably denied request for counsel in uncomplicated case where plaintiff had prepared coherent written submissions and demonstrated familiarity with facts); *Johnson v. Doughty*, 433 F.3d 1001, 1007–08 (7th Cir. 2006) (upholding court's denial of plaintiff's requests for counsel where case wasn't "overly difficult" and plaintiff had filed successful motions).

Westbrook also presents several reasons purporting to excuse his tardiness in responding to the Boy Scouts' motion for summary judgment, which we together construe as a second appellate claim that the district court erred in denying his postjudgment motion. But Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures," *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000) (quotation marks and citation omitted); see *Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 954 (7th Cir. 2013), and Westbrook did not otherwise identify a manifest error of law or present newly discovered evidence that could not, through the exercise of due diligence, have been given to the court before it granted summary judgment, see *Heyde v. Pittenger,* 633 F.3d 512, 521 (7th Cir. 2011); *Heft v. Moore,* 351 F.3d 278, 282–83 n.1 (7th Cir. 2003) . The district court therefore did not abuse its discretion in denying Westbrook's postjudgment motion. See *Egonmwan v. Cook Cnty. Sheriff's Dep't,* 602 F.3d 845, 852 (7th Cir. 2010).

We have reviewed Westbrook's remaining contentions, and none has merit. Accordingly, we AFFIRM the judgment of the district court.