**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark HAYNIE, Defendant–Appellant.**

**No. 98–1165.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1999.

Decided June 9, 1999. [1]

---

[1]. Judge Cummings participated in the consideration of this case, but he died before the decision was rendered.

Dave Styler (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

J. Clifford Greene, Jr. (argued), Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, BAUER, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

After a bench trial, Mark Haynie was convicted of conspiracy to possess illegal firearms, conspiracy to use firearms during the commission of drug trafficking crimes, and conspiracy to distribute cocaine. He appeals, arguing that the district court erred on two evidentiary issues.

Haynie is a member of the Four Corners Hustlers street gang, a group, according to the evidence, that operates on the west side of Chicago. In the spring of 1994 Angelo Roberts, one of the leaders of the gang, was convicted on state criminal charges and sent to the Illinois River Correctional Center in central Illinois. Apparently undeterred by his personal experience with the fact that crime does not pay, Roberts hatched a plan to purchase an arsenal of handguns and military-style weapons for his gang. He wanted the gang to be able to wipe out its competition and even talked about blowing up the 11th District police station because the police there were interfering with the Hustlers' drug trade.

Roberts contacted Daren Stacee Hardaway, who had previously supplied guns to the gang. Unbeknownst to Roberts, however, Hardaway had been arrested by agents of the Bureau of Alcohol, Tobacco and Firearms in the interim and had agreed to cooperate in the ATF's efforts to nab his former customers. Hardaway visited Roberts in prison, and ATF agents listened in on their conversations and recorded them. In coded language the two men discussed the purchase, and Roberts wrote out a list of the weapons he wanted. Roberts also said that his right-hand man, who, as luck would have it, turned out to be Haynie, would do the deal on his behalf. Roberts said that Haynie would transport the weapons using a U–Haul truck loaded with furniture and hide the weapons in the furniture.

The next day, Roberts and Hardaway spoke by telephone, and again the ATF recorded the conversation. Hardaway suggested that the gang's payment for the weapons be half in cash and half in cocaine. Roberts agreed and said that gang member Shawn Ivy would supply the money and drugs. After further phone negotiations with Hardaway, Roberts called Haynie to give him the skinny on the deal. The Illinois correctional authorities recorded the call. Roberts told Haynie to get a U–Haul and to staple "it" to the bottom of the furniture, and Haynie agreed that he would. Roberts explained the terms of payment and the different types of weapons Haynie would receive. Haynie assented and showed his enthusiasm for the enterprise: "Yeah, then we'll be bad as a motherfucker too [after we get the guns]."

A few weeks later Haynie called Hardaway to say he was "going to grab on that merch" (pick up the guns) and that he was "fixing to grab everything that he [Roberts] said that you had." He closed by telling Hardaway that he was going to call Roberts and ask him again how many of each item he was supposed to purchase. A short time later Roberts and Hardaway again spoke on the phone and agreed that the transaction would take place during the upcoming week.

The deal was postponed for a time when Haynie suffered his own bout of incarcera-

tion at the hands of the Illinois authorities. After Haynie and Roberts were released and after further recorded haggling with Hardaway, the day of the big transaction finally arrived. The plan called for Hardaway to meet the gang members in a parking lot where they would exchange the weapons for cash and drugs. But Roberts, who decided to personally oversee the deal, could not locate Ivy, who was supposed to supply the cash and cocaine for payment. Instead, Roberts drafted James Frazier, another gang member, to pay for the guns. Understandably cautious, Roberts and Frazier then recruited a 16–year–old boy to meet Hardaway with the drugs and money and tell him to drop off the guns at another location. ATF agents were waiting with Hardaway and arrested the boy. News of the arrest got back to Roberts and Frazier, and they vamoosed. Later they met with Haynie, who assured Frazier that he would make sure Frazier was repaid for the drugs and money the ATF had seized. Frazier, Ivy, and Haynie were eventually picked up and brought to trial. Roberts was murdered before he could be arrested. Haynie and Ivy were tried jointly for their part in the plan. District Judge James B. Moran, after hearing the evidence, convicted Haynie and acquitted Ivy.

■ On appeal, Haynie challenges (1) the district court decision to admit the tape-recorded conversations between Roberts and Hardaway, and (2) the district court decision to allow the testimony of Frazier regarding Haynie's statements and actions after the deal fell apart. We review Judge Moran's evidentiary decisions for clear error. *See United States v. Guyton*, 36 F.3d 655, 658 (7th Cir.1994); *United States v. Saulter*, 60 F.3d 270, 275 (7th Cir.1995). The record reveals nothing approaching error, clear or otherwise.

■ Before the trial, the government proffered the tape-recorded conversations of Haynie's coconspirators Hardaway and Roberts for admission into evidence. Under Federal Rule of Evidence 801(d)(2)(E) the statements of a coconspirator are ad-missible if the trial court determines by a preponderance of the evidence that: (1) a conspiracy existed; (2) defendant and declarant were involved in the conspiracy; and (3) the statements were made during and in furtherance of the conspiracy. *See United States v. Godinez*, 110 F.3d 448, 454 (7th Cir.1997). This circuit has long sanctioned so-called *Santiago* proffers. *See United States v. Van Daal Wyk*, 840 F.2d 494, 496 (7th Cir.1988); *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). This procedure allows the judge to conditionally admit coconspirator statements based on the government's proffer. If at the close of its case the prosecution has not met its burden to show that the statements are admissible, the defendant can move for a mistrial or to have the statements stricken. *See id.* At pretrial proceedings Haynie admitted that the government's proffer as written established a conspiracy. He made it clear, however, that he did not believe that the evidence produced at trial would measure up to the proffer. Judge Moran admitted the statements conditionally and emphasized that if the government did not meet its Rule 801(d)(2)(E) burden the statements would be stricken.

■ At the end of the prosecution's case Judge Moran ruled that the government had met its burden on the admission of Roberts' statements. Haynie made no further objection to the statements; nor did he move to have the statements stricken from the record. A defendant waives an issue for appeal if he does not raise it before the trial court. *See United States v. Brookins*, 52 F.3d 615, 623 (7th Cir. 1995). The only exception to this rule is that an appellate court may correct serious trial errors that affect substantial rights despite a defendant's failure to object at trial. *See United States v. Lakich*, 23 F.3d 1203, 1207 (7th Cir.1994); Fed.R.Crim.P. 52(b). At trial Haynie did not object to Judge Moran's final decision to admit into evidence the coconspirator's statements he had previously admitted conditionally.

Therefore, the issue was waived at trial. On appeal Haynie has given us no reason to believe we should exercise our authority under Rule 52(b) to correct a serious trial error affecting his substantial rights despite his waiver. In fact, Haynie's counsel failed to address the waiver issue at all. The government argued waiver in its brief to this court. For reasons he was unable to explain at argument, defense counsel did not file a reply brief responding to the argument. Therefore, the challenge to the admission of the Roberts-Hardaway conversations has been waived.

■ We hasten to add that our decision in this case need not rest on waiver alone. There is ample evidence in the record to support the admission of Roberts' statements as the statements of a coconspirator. Judge Moran properly considered the coconspirator statements themselves, Haynie's membership in the gang, and most importantly Haynie's own statements and actions to determine that the government had produced enough evidence of the existence of a conspiracy and Haynie's membership in it to support the admission of coconspirator statements. *See Bourjaily v. United States,* 483 U.S. 171, 180, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); *United States v. Thomas,* 86 F.3d 647, 652 (7th Cir.1996); *Van Daal Wyk,* 840 F.2d at 498. There was no error in the admission of the recorded Roberts–Hardaway conversations.

■ Finally, Haynie argues that Judge Moran should not have allowed Frazier to testify about Haynie's statements and actions after the 16–year–old courier was arrested. He argues that the arrest ended the conspiracy and therefore the statements of Frazier as a coconspirator regarding events after that point are inadmissible. The argument is baseless. Frazier testified at the trial and was fully available for cross-examination. His statements about events he personally observed were not hearsay, and his testimony regarding Haynie's statements were admissible as admissions. For these reasons, the judgment of the district court is AFFIRMED.