**UNITED STATES, Plaintiff,**

v.

**Percy Z. GILES, Defendant.**

**No. 99 CR 69.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 15, 1999.

Walter Jones, Jr., Camille B. Conway, Mark Douglas Andrews, Pugh, Jones & Johnson, P.C., Chicago, IL, for defendant.

Morris O. Pasqual, United States Attorney's Office, Chicago, IL, for U.S.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Percy Giles, an Alderman for the 37th Ward of the City of Chicago, was indicted under federal and state extortion, bribery, and racketeering charges in 1997. The gravamen of the charges relevant here was that in January 1995, Giles used his office to attempt to extort money from one John Christopher in exchange for Giles' arranging for city work to be contracted to Teka, a company allegedly secretly controlled by Christopher. If proven, this would constitute a violation of the Hobbs Act, 18 U.S.C. § 1951, among other statutes. The government proffered in evidence the testimony of James Blassingame, an associate of Giles and purported witness to and co-conspirator in criminal relations between Giles and Christopher. Christopher was an informant for the government during the period under consideration, and the

government taped several conversations between Christopher and Giles. Christopher is currently in the federal Witness Protection Program and the government does not plan to call him as a witness.

I here consider several pre-trial motions. The most important of these concern: (1) the admissibility of certain supposedly exculpatory statements of Giles recorded by the government on audiotapes on February 11, 1995, (2) whether Giles may compel Christopher to testify as a witness on his behalf, and (3) whether certain statements of Blassingame, Giles, and Christopher may be admitted as co-conspirator statements or on other grounds.

## I.

First, the admissibility of the tapes. The indictment charges that on January 18, 1995, Giles agreed with Christopher to accept money in exchange for performance of official acts, and did in fact accept some of the money at a meeting with Christopher on January 20. On February 11, three weeks later, Christopher and Giles had a conversation in which Giles denied any intention to perform illegal acts. This conversation was audiotaped by the government, unbeknownst to Giles.

Giles now seeks to introduce this tape into evidence. Giles maintains that if the tape is hearsay, it is nonetheless admissible because it goes to his then existing state of mind, Fed R. Evid. 803(3), that admission is required by the Rule of Completeness, Rule 106, or under the catchall exception to the hearsay rule, Rule 807. He also argues that the statements on the tape are not hearsay, i.e., out-of-court statements offered to prove the truth of the matter asserted, Rule 801, but are offered as evidence of conduct inconsistent with guilt.

██ I hold that the statements on the tape are inadmissible hearsay. First, they are hearsay. They are offered to show that Giles lacked the requisite criminal intent, that is, to prove the truth of the matter asserted, that Giles did not want to do anything illegal in return for the pay-ments—the substance of the statements at issue. Stating that one intends to do nothing illegal is arguably conduct inconsistent with guilt, but when the statement is offered to show the truth of the proposition that one intended to do nothing illegal, the difference between mere conduct and inadmissible hearsay is too fine for me to parse.

██ Second, the statements come under no recognized (or at least no argued) hearsay exception. They cannot be used to show then-existing state of mind because the offense here charged and at issue, extortion under the Hobbs Act, "is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the *quid pro quo* is not an element of the offense." *Evans v. United States*, 504 U.S. 255, 268, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992); *see also United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993). Giles is charged with accepting a bribe in exchange for a promise to perform an official act, knowing that it was offered for that purpose, and doing this in mid-January 1995. To show his state of mind, the evidence offered must be contemporaneous. Three weeks later is too late. *See United States v. Neely*, 980 F.2d 1074, 1083 (7th Cir.1992) (two and a half weeks later is too late).

Giles argues that a three-week lag is not too long because there is no suggestion he knew he was being recorded and so was not on notice that his conduct was considered suspicious. There is no such notice requirement in the law, and the content of the statements in any event reveals that Giles knew that his conduct might be investigated and regarded as suspicious. He says: "But if it's ... using influence to help you get some government contracts like that, then it could be a problem later on."

In a mistitled Motion to Reconsider Giles adds the argument that the February 11 conversation should be admitted because it shows that the government

knew that Giles did not establish a *quid pro quo* in the earlier conversations of January 18–20, and so the government went desperately fishing for some inculpatory statement. If the earlier conversations involve no *quid pro quo* then Giles should be acquitted of extortion on their basis. Giles may argue this to the jury or move for a directed verdict with respect this charge. Giles' later reflections are not relevant and are not admissible to show his much earlier state of mind. Neither are inferences about what the government thought that the evidence showed relevant. The question is what the evidence *does* show. I agree that the government's attitude would be different had Giles said something inculpatory on February 11, but that is as it should be. Such a hypothetical statement would have been an admission, if it related to the January events, or perhaps a new crime.

▮▮▮ For these reasons, as well, Giles' argument that the Rule of Completeness requires admission of the statements fails. In addition, the Rule of Completeness does not "render admissible the evidence which otherwise is inadmissible under hearsay rules," *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir.1996); *accord Phoenix Assoc. III v. Stone*, 60 F.3d 95, 103 (2nd Cir.1995), and this statement is otherwise inadmissible.

▮▮▮ Giles' final argument is that the taped statements should be admitted under Fed.R.Evid. 807, the catchall or residual exception. Under this exception, a hearsay statement must meet five requirements to be admissible: (1) circumstantial guarantees of trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice; and (5) notice. *United States v. Hall*, 165 F.3d 1095, 1110 (7th Cir.1999). The Seventh Circuit construes the catchall exception narrowly to prevent it from becoming the exception that swallows the hearsay rule. *United States v. Sinclair*, 74 F.3d 753, 759 (7th Cir.1996). Critical to the admission of a hearsay statement under this exception is a finding by the district court that the statement is trustwor-

thy. *Hall*, 165 F.3d at 1110. Giles' self-serving statement simply cannot provide the "circumstantial guarantees of trustworthiness" required by the residual hearsay exception. *See Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 283 (5th Cir. 1991).

▮▮▮ Moreover, to be admissible under Rule 807, the statement must be evidence of a material fact. Although there is no general rule that later evidence of state of mind cannot be relevant to an earlier state of mind, in the circumstances I find that Giles' state of mind on February 11 is not relevant to whether he had the requisite intent three weeks earlier, since the crime is alleged to have been completed by January 20.

## II.

▮▮▮ Giles moves, second, that Christopher be called to testify under the Sixth Amendment right of compulsory process, among other grounds. "The right to offer the testimony of witnesses and to compel their attendance, if necessary, is in plain terms the right to present a defense...." *Washington v. Texas*, 388 U.S. 14, 18, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). A defendant may not call just any witness—Giles could not compel the testimony of President Clinton or Diana Ross if they had nothing to contribute to the case. But he may compel the testimony of a witness if that witness can "provide[ ] personal observations concerning relevant and material evidence." *United States v. Tanner*, 941 F.2d 574, 585 (7th Cir.1991).

▮▮▮ The government argues that Giles may not call a witness for the sole purpose of impeaching him, which is of course true. *See United States v. Raineri*, 670 F.2d 702, 713 (7th Cir.1982) (no Sixth Amendment violation to quash subpoena upon witness who was unable to give relevant and material testimony and was recalled merely to be impeached). The government asserts that it believes that Giles may call Christopher for this purpose, giv-

en what it calls Christopher's "sordid" history and "unsavory" nature, and moves that Giles be required to make a pre-trial showing of the relevance of any expected testimony from Christopher. The government's unsupported belief or suspicion about defense motives is not itself a basis to conclude that Giles wishes to call Christopher for an improper purpose. Here Giles claims that Christopher can testify as to certain unrecorded conversations which would tend to exculpate him by showing that his intentions were lawful and innocent. If these conversations took place roughly contemporaneously with the alleged crimes—nothing as late as February 10 or 11, 1995 could be admitted—they would appear to be relevant and material.

Unfortunately, the two examples of conversations Giles wishes to question Christopher about took place either in 1992, three years before the events in question, or no earlier than February 10—too early or late to be material. Giles says these conversations are important to show the context and relation between himself and Christopher, but he does not explain how these vague and general sorts of facts about their relations might bear upon the key question, which is whether the conversations of January 18–20 mean what they sound like at first blush, that Giles promises official favors in exchange for money, or mean something more innocuous.

■■■ Giles argues that Christopher's statement should be admitted to show the "victim's statement of mind," but in an attempted extortion case like this the victim's state of mind is not relevant. *See United States v. Finley,* 708 F.Supp. 906, 913 (N.D.Ill.1989). Giles cites *United States v. Knox,* 68 F.3d 990 (7th Cir.1995), which states that to prove attempted extortion under the prong of 18 U.S.C. § 1951 defining extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear" it is

necessary to show that the victim's surrender of property "was induced by actual or threatened force, violence, or fear." 68 F.3d at 995–996. However, Giles is charged under the "color of official right" prong of § 1951, and so cases under the "force, violence, or fear" prong are not relevant. Giles complains that the government's decision to charge attempted extortion rather than extortion is nothing more than a calculated move to keep Christopher from the jury; if so, it was well-calculated.

In the "Motion to Reconsider," Giles also argues that he should be able to question Christopher about whether the government scripted their exchange and induced him to cut off Giles when Giles started to make an exculpatory statement. Of course, Christopher's testimony about what the government said would also be hearsay if offered, as it apparently would be, for its truth, and Giles does not explain under what exception it would be admitted. Insofar as there was government misconduct with respect to Christopher, indeed, the proper witnesses to call in regard to it would be the government's own employees, and not Christopher, as long as the questions could be formulated to avoid inadmissable hearsay.

I grant the government's request to require a showing that Christopher's testimony should be admitted and, having given Giles an opportunity to make that showing orally and in writing, hold that Giles has not satisfied the showing that Christopher's testimony would be relevant.

### III.

■■■ Third, I take up the admissibility of Blassingame's and Giles' statements as co-conspirators under Fed.R.Evid. 801(d)(2)(E).[1] Co-conspirator testimony about the words and deeds of a defendant is not hearsay. *United States v. Emenogha,* 1 F.3d 473, 480 (7th Cir.1993). The

---

1. Christopher was acting as a government agent and cannot be a conspirator, since he lacked the requisite criminal intent. *See Unit-* ed States v. Pulido, 69 F.3d 192, 206 (7th Cir.1995). I address the admissibility of his statements at the end of this discussion.

Seventh Circuit sanctions *Santiago* proffers. This procedure allows the judge to conditionally admit coconspirator statements based on the government's proffer. If at the close of its case the prosecution has not met its burden to show that the statements are admissible, the defendant can move for a mistrial or to have the statements stricken. See *United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir.1978)(*overruled on other grounds by Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). To have the statements admitted under *Santiago*, the government must show that it is more likely than not that there was a conspiracy, the defendant and the declarant belonged to it, and the proffered statements were made during the course and in furtherance of the conspiracy. *United States v. Haynie*, 179 F.3d 1048, 1050 (7th Cir.1999). The content of the hearsay statement may be considered to determine its admissibility under Rule 801(d)(2)(E). *United States v. Brookins*, 52 F.3d 615, 623 (7th Cir.1995). The Seventh Circuit requires "more than the statements of the conspirators themselves to show a conspiracy. This requirement can be satisfied by the testimony of nonconspirators or by corroboration of facts contained in the statements of the conspirators." *United States v. Petty*, 132 F.3d 373, 380 (7th Cir.1997) (internal citations omitted).

The only debate here is about whether the conspiracy existed and whether, if it did, Giles was a member of it. Giles argues, first, that the evidence in the supposed co-conspirator statements proffered by the government fails to show a conspiracy because it does not contain the explicit promise of a *quid pro quo* required in campaign contribution cases by *McCormick v. United States*, 500 U.S. 257, 273, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991). Giles says he will argue that the money Christopher gave him was a legitimate campaign contribution, not a bribe extorted by promise of misuse of official powers. The government's evidence, however, will support the claim that there was as explicit a promise as one might reasonably expect in the circumstances and that the money was not a campaign contribution in any event. Consider, for example, the following excerpts from an audio-taped conversation from January 18, 1995:

> Christopher: I want a piece of that excavating work.
>
> Giles: Alright.
>
> \*   \*   \*   \*   \*   \*
>
> Blassingame: I was saying we need ten thousand.
>
> Christopher: Okay.
>
> Blassingame: That's the number we [Blassingame and Giles] talked about.
>
> Christopher: Okay. For that ten thousand, you're gonna, what's gonna happen here is basically an effort to be given. Okay? A commitment of trying to get some work is that what we're saying here?
>
> Blassingame: Mmm hmm.
>
> Christopher: Okay, fine. Now could I ask, could I make a little terms on the ten, not terms of work or anything, if it's alright with everybody here at this table.
>
> Giles: Mmm hmm.
>
> \*   \*   \*   \*   \*   \*
>
> Christopher: This ain't no campaign contri [sic], because I can't, I can't show it on the sheets, Jim.
>
> Blassingame: Right.
>
> Christopher: Okay, that's understood?
>
> Blassingame: That's understood.
>
> Giles: Mmm hmm.

This exchange shows that, more likely than not, there was an explicit promise of a *quid pro quo*, "effort" in connection with a construction contract in exchange for $10,-000. Moreover the testimony proffered shows that, more likely than not, the money was not offered as a campaign contribution, so the government is not held to the degree of explicitness required by *McCormick*, although I hold that the government

has satisfied the *McCormick* requirements in any event.

Giles also argues that there was insufficient corroboration of the statements of the alleged conspirators. The government proffers evidence that Giles failed to deposit into his political operating account $4,500 of a January 20 payment of $5,000 from Christopher ($500 had allegedly been paid to Blassingame as a go-between), but rather gave the money to his brother Ferdie Giles, whom, the government says, deposited it into a personal savings account maintained in his own name. According to the government, this deposit provides independent corroboration.

Giles objects that there is a discrepancy in the government's evidence in that the money from Christopher was paid in $100 bills, but the bank personnel will not support that the deposit was made in those denominations; and in any case, Giles' brother will tell a different story about the origin of the deposit. That is his right, and a finder of fact may believe such a story or accept such discrepancies as creating reasonable doubt. But I hold that the government has provided sufficient corroboration to admit the statements as co-conspirator statements. Minor discrepancies and defense theories do not undermine my confidence that the government has shown by a preponderance that there was a conspiracy to which Giles and Blassingame belonged. (A preponderance is of course insufficient to convict.) Moreover, Giles does not dispute that he never filed a campaign disclosure form reflecting any of the money he received from Christopher. I therefore hold that, more likely than not, there was a conspiracy and Giles was part of it. Since the other *Santiago* elements are not in dispute, I provisionally admit the disputed statements as co-conspirators' statements under Fed.R.Evid. 801(d)(2)(E).

Giles does not challenge the admissibility of Christopher's part in these conversations. In any event the conversations would be unintelligible or misleading without his remarks because Giles' responses to Christopher's statements are arguably adoptive admissions, which also means they are not hearsay.

IV.

In conclusion, Giles' motion in limine to (1) admit into evidence the February 11, 1995 tape is DENIED. I DENY his motion to (2) call John Christopher to testify. I GRANT the government's motion to require a showing of the relevance of that testimony, which I hold to be unsatisfied. Finally I GRANT the government's *Santiago* request to (3) admit the co-conspirator statements of Giles and Blassingame and its unopposed request to admit Christopher's statements as part of Giles' adoptive admissions.

The government's uncontested motions in limine to bar Giles from referring to: (4) potential penalties, (5) prior prosecution experience of counsel, (6) matters concerning discovery, and (7) allegations of entrapment are GRANTED, as are the government's motions to bar Giles from referring to: (8) irrelevant evidence pertaining to the Hobbs Act, since irrelevant evidence is inadmissable anyway, but relevant evidence is not barred, and (9) details of underlying convictions of government witnesses, unless these bear upon witness credibility. The government's motions to prevent Giles from offering relevant evidence of (10) lawfulness pertaining to the conduct which forms the basis of the charges against him is DENIED. The government's motion to (11) prevent general argument or questions about alleged government misconduct is GRANTED, but this does not prevent specific questions into allegations of governmental misconduct which tend to show motive and bias with respect to particular witnesses. Giles' motion that (12) the government be required to immediately turn over all exculpatory materials under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and impeachment evidence under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104

(1972), is GRANTED. This material should have been turned over long ago and further delay is inexcusable. Giles' motion to (13) bar the government from making any reference to a "Mac's Plus voucher" of January 6, 1996 is DENIED.