In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-2365

CLEOTHER TIDWELL,

*Plaintiff-Appellant,*

*v.*

BRYCE HICKS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 10-cv-974-JPG-PMF — **J. Phil Gilbert**, *Judge.*

SUBMITTED MAY 26, 2015[*] — DECIDED JUNE 26, 2015

Before WOOD, *Chief Judge*, and CUDAHY and RIPPLE, *Circuit Judges*.

WOOD, *Chief Judge*. Cleother Tidwell, an Illinois inmate, brought this suit under 42 U.S.C. § 1983; in it, he contends that three prison guards violated his Eighth Amendment

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal is therefore submitted on the briefs and record. See FED. R. APP. P. 34(a)(2)(C).

rights when they failed to protect him from attack by a fellow inmate and then subjected him to excessive force by restraining him during the attack. The district court granted judgment as a matter of law for two of the guards, and a jury returned a verdict in favor of the third. We affirm.

## I

The underlying incident occurred on November 30, 2008, at Pinckneyville Correctional Center, where Tidwell was then confined. (He was later moved to Menard Correctional Center.) Before that date, Tidwell had experienced several run-ins with fellow inmate Levi Hoyle. The encounters were becoming increasingly violent; one involved a scuffle in which Tidwell says he was grabbed and held by one prison guard while Hoyle punched him repeatedly.

Tidwell filed a form civil-rights complaint and promptly moved to have counsel recruited for him. The district court granted the motion, and Tidwell, through counsel, amended his complaint to allege both excessive-force and failure-to-protect claims under the Eighth Amendment. But communications between Tidwell and his attorneys broke down, and eventually the court granted the attorneys' motion to withdraw. Nevertheless, Tidwell continued to ask the court for assistance of counsel or an investigator to help him locate former inmates to testify at trial. The court denied these requests, but it directed that Tidwell be provided subpoena forms, and it recruited standby counsel to assist him at trial. Once trial began, however, Tidwell moved to discharge standby counsel, and the court granted the motion.

At trial Tidwell testified that he had been in the segregation unit at Pinckneyville for only a short time when he came

into conflict with Hoyle, an inmate-worker who delivered meals in the segregation unit. According to Tidwell, his problems with Hoyle began when Hoyle repeatedly threw his food tray into his cell so roughly that food would spill on the floor. Hoyle also taunted him by threatening to put his genitals in Tidwell's food. Tidwell complained to three guards—Cory Harbison, Paul Johnson, and Bryce Hicks— that he did not want Hoyle delivering his food, but Hoyle was allowed to continue with the deliveries. One day Tidwell, exasperated with Hoyle's provocations, tried to hit Hoyle with a container of urine that he tossed through the slot in his cell door. The urine unfortunately splashed both Hoyle and Johnson, who were nearby. Both quickly departed—Johnson to change his uniform and write up an incident report, Hoyle to shower and change. Tidwell was told to pack up his property because he was being transferred to another segregation unit. His cellmate was moved first, leaving Tidwell behind, alone in the cell.

The parties disputed what happened next. According to Tidwell, the three prison guards had enlisted Hoyle to beat him in retaliation for the urine-throwing incident. The plan, Tidwell explained, was to send Hoyle into his locked cell, where Tidwell—handcuffed—would be unable to resist assault or even escape. Tidwell testified that Hicks, Harbison, and a third guard (who Tidwell believed was Johnson) came to his cell under the guise of transferring him, but he quickly suspected a set-up once he spotted Hoyle in the hallway through his partly open door. Fearing for his safety, Tidwell burst through his unlocked cell door and preemptively tried to kick Hoyle. As Tidwell bolted from his cell, Hicks grabbed him and held him so that Hoyle could beat him.

The defendants' account is quite different. They denied any wrongdoing and maintained that Tidwell ran out of his cell and had to be restrained. Hicks was best positioned to do so. Only Hicks and Harbison came to transfer Tidwell, all three guards testified; they added that Johnson was away writing his report on the urine-throwing incident. Hoyle was visible to Tidwell only because he was mopping up the urine in the hallway near Tidwell's cell. When Tidwell darted out of his cell door toward Hoyle, Hicks pulled him back, but Tidwell slipped on the wet floor and bumped his head on the doorjamb. Hicks then returned Tidwell to his cell but noticed that his head was bleeding and took him to the showers. A prison nurse examined him; later he was sent to an outside hospital and received stitches for the cut on his head.

Hoyle's account did not match either of the other two. He testified that he crept back on his own volition to the hallway near Tidwell's cell in order to retaliate against him for throwing the urine. He denied being directed to do so by the guards.

After Tidwell rested his case, the defendants moved for judgment as a matter of law. On the failure-to-protect claim, Johnson and Harbison argued there was no evidence that they knew violence was about to take place or that there was any opportunity to intervene. Hicks argued that the only evidence of impending violence was Tidwell's conclusory statement that he was set up. For the excessive-force claim, Johnson and Harbison contended that there was no evidence they used any force; Hicks maintained that the force that he used to control the situation was reasonable.

The district court granted judgment as a matter of law on both claims for Johnson and Harbison. It concluded that

there was no evidence that Johnson was present at the time of the incident or that he set Tidwell up to be attacked. As for Harbison, the court stated, the evidence showed only that he was positioned behind Hicks. This was not enough to permit a finding that he was involved in any alleged set-up. It denied the motion as it applied to Hicks, finding conflicting evidence with regard to his involvement.

During the jury instruction conference, Hicks requested an instruction stating that "[t]he law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial." Tidwell objected that this instruction was incomplete because it did not acknowledge that the jury could draw a negative inference against a party from a witness's absence. He asked the court to give Seventh Circuit Pattern Jury Instruction § 1.19, which says "[Witness] was mentioned at trial but did not testify. You may, but are not required to, assume that [Witness's] testimony would have been unfavorable to [Plaintiff] [Defendant]." The court noted Tidwell's objection but decided to give Hicks's instruction rather than Tidwell's. It did so because the only missing witness Tidwell had mentioned was a prison doctor, and Tidwell could have called the doctor as his own witness. The jury returned a verdict in favor of Hicks on both claims.

## II

On appeal, Tidwell argues that the district court should not have granted judgment as a matter of law for Johnson and Harbison on his failure-to-protect claim. The court erred, he asserts, by thinking it critical that there was no evidence that either Johnson or Harbison knew that violence was about to occur. A failure-to-protect claim, he maintains,

does not require a guard "to have prior knowledge or some idea that violence is imminent." It was enough, he says, that Harbison and Johnson stood to the side while Hicks held him up for Hoyle to attack him.

But Tidwell misapprehends his burden in establishing a failure-to-protect claim. Tidwell had to show, either through direct or circumstantial evidence, that the defendants had actual knowledge that he was at serious risk of being harmed. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). He has not done so. In fact, Tidwell presented no evidence that Johnson was even present. The defendants and Johnson's supervisor testified that Johnson was in another area of the segregation unit writing an incident report. The record is devoid of evidence that would allow a reasonable jury to conclude Johnson had any knowledge of a set-up. Nor did Tidwell present evidence that Harbison was aware of any risk. Harbison was standing behind Hicks in a narrow hallway and would not have been able to move around Hicks to intervene when the situation blew up.

Next Tidwell argues that the court abused its discretion by failing to give the missing-witness Pattern Jury Instruction, § 1.19. The jurors should have been told, he urges, that they could infer that a missing witness would have testified unfavorably with respect to the party who failed to call him. Perhaps recognizing the weak nature of his trial showing on this point, Tidwell now argues for the first time that Hicks should have called three former inmates who could have confirmed the antagonism between Hoyle and Tidwell.

Tidwell's failure to make this argument in the district court, however, means that it is forfeited (if not waived)

here. See *Hahn v. Walsh*, 762 F.3d 617, 639 (7th Cir. 2014); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). In any event, for his proposed instruction to apply, Tidwell had to show that the former inmates were "peculiarly in the power of the other party to produce." *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993). Tidwell presented no such evidence. Tidwell's recruited counsel tried unsuccessfully to locate these former inmates, and the defendants' counsel reported that she searched the Illinois Department of Corrections database but found no matches for the names Tidwell provided. Nothing indicates that these possible witnesses were within Hicks's exclusive control.

Finally, Tidwell contends that the court erred when it refused to recruit new counsel for him after his first set of lawyers was allowed to withdraw. He needed a lawyer, he maintains, because his confinement in jail prevented him from locating witnesses, and prison policies prohibited him from communicating with inmates or searching through its records to identify prisoners who might have witnessed the events.

As we have recognized when considering similar claims by inmates, in many cases "sound resolution depends on evidence to which the plaintiff in his distant lockup has no access; and a plaintiff's inability to investigate crucial facts by virtue of his being a prisoner or of the remoteness of the prison from essential evidence is a familiar ground for regarding counsel as indispensable to the effective prosecution of the case." *Junior v. Anderson*, 724 F.3d 812, 815 (7th Cir. 2013) (collecting cases); see also *Schlemm v. Wall*, 784 F.3d 362, 366 (7th Cir. 2015) ("Because resolving his claims may require evidence that a prisoner will find it hard to obtain

and present, the district court should seriously consider re-cruiting counsel to assist Schlemm."). *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc), directs the district court to conduct an individualized inquiry considering this plaintiff, litigating this particular case. The nature of the case and the plaintiff's circumstances and impediments, including the consequences of his incarceration, are among the relevant considerations.

We need not consider whether the district court misap-plied the *Pruitt* standard, however, because we will reverse only upon a showing of prejudice, 503 F.3d at 659, and Tid-well has failed to make such a showing. He offers no reason to think that new counsel or an investigator might have turned up evidence that would have affected the outcome of the case. See *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 592–93 (7th Cir. 1996). The witnesses whom he hoped to find were former inmates who, he says, would have been able to corroborate *parts* of his testimony (that he tried to submit a grievance about Hoyle; that he complained to another guard—not party to this suit—about Hoyle's misconduct while delivering food and the defendants' lack of action; and that Harbison told the inmate-workers to clear the segregation unit for his transfer so that no one would be able to observe the beating administered by Hoyle). But this testimony would at best have duplicated Tidwell's own testimony. Tidwell does not assert that any of these potential witnesses saw the actual incident. Moreover, as we noted, no one could find the pro-posed witnesses he identified. This is too thin a reed to sup-port reversal.

We AFFIRM the judgment of the district court.