NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 22, 2015[*]
Decided July 24, 2015

**Before**

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-3667

| | |
|---|---|
| MIKE RUSSELL, | Appeal from the |
|     *Plaintiff-Appellant*, | United States District Court for the |
| | Central District of Illinois. |
|     *v.* | |
| | No. 13-CV-2005-DGB |
| TIMOTHY BUKOWSKI and | |
| KENT SMITH, | David G. Bernthal, |
|     *Defendants-Appellees*. | *Magistrate Judge*. |

**O R D E R**

Mike Russell, a pretrial detainee in Illinois, sued corrections officials under 42 U.S.C. § 1983, alleging that they failed to protect him from attack by a fellow inmate. A magistrate judge, trying the case by consent, ruled that the defendants were not liable. Because the credibility findings and discretionary rulings are proper, we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

This case concerns a fight between Russell and another inmate at the Kankakee County Detention Center. The Center was Russell's third pretrial location because, fearing gang members, he had twice requested protective custody and received new housing. A disciplinary committee ruled that Russell started the fight and disciplined him with segregation. Russell then sued Sheriff Timothy Bukowski and Lieutenant Kent Smith, asserting that they violated the Fourteenth Amendment by failing to protect him from an inmate's assault. *See Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

Russell wanted assistance with his case. Initially a jailhouse lawyer helped Russell, but when the jailhouse lawyer was transferred, Russell asked the court to recruit counsel for him because he could not understand the defendants' documents. The court denied the request because Russell had not first attempted to find counsel on his own as required by *Pruitt v. Motte*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). Russell twice renewed his request, elaborating that he needed counsel because he was illiterate, had only a middle-school education, and was unable to research in the law library. The court again denied the requests because, despite its reminder, Russell still had not attempted to find counsel on his own. It added that Russell's asserted illiteracy "has not impeded his efforts to obtain assistance in order to file various pleadings in his case."

At a bench trial, Russell presented his version of the fight. He testified that as he was watching television in the dayroom on December 8, 2012, he argued with another inmate named Rello over sports. Rello became aggressive, profane, and threatening. Fearing for his life, Russell pushed the emergency intercom and asked for protective custody. Lieutenant Smith answered the call, but according to Russell, Smith refused to help him, warning him that he had "better learn how to fight son." Russell then turned around, saw Rello poised to attack, and then blacked out, later awakening in a pool of his own blood. Officer Avalon Brown escorted Russell to the medical unit, which transferred him to a hospital for stitches and staples.

Demarius Bridges, a fellow inmate, also testified about the fight. He said that he heard Russell plead, "don't kill me," but conceded that he did not see the fight because he was on the telephone.

Russell also attempted to present evidence that the defendants had destroyed a video recording of the fight. He asked Officer Michael Downey to testify about the day-to-day operations of the jail and its video cameras. (Downey testified in lieu of Bukowski, who was recovering from surgery.) Downey explained that the common areas of the jail were equipped with cameras that recorded events on a periodic basis,

but there was no recording of Russell's attack. Moreover, all video recordings, Downey added, are retained for only 30 days, at which point the storage medium is reused. Downey also stated that an officer in the command center cannot point a camera to a specific location when an inmate presses the emergency-call button. Russell asked Downey whether the detention center was "covering up" for Smith by "taping over" the video recording of the fight. The court interrupted, pointing out that no testimony suggested that the fight had ever been recorded. Downey then confirmed that he had never seen any video of the December 8 fight, and he knew of no one at the jail who had directed an officer to destroy any recording from December 8.

The defense witnesses contradicted Russell's version of the fight. First, Lieutenant Smith testified that although on December 8 he was in the command center, he did not receive any emergency-intercom calls about Russell's attack. He learned of the fight only when Brown brought Russell to the medical unit, adjacent to the command center. Second, Rico Hargrove, another inmate, testified that Russell started the fight by stabbing a different inmate, Kendrion Lomack, with a metal object. Russell made a hearsay objection to this testimony, which the court overruled because Hargrove was testifying about personal observations. Third, Officer Brown testified that he found Russell bleeding after the fight and that he took him to the medical unit before locking down the unit and finding the other participants.

The court ruled in favor of Bukowski and Smith, giving four reasons. First, Russell did not establish that Bukowski played any role in failing to protect Russell from an attack. Second, because the jail's disciplinary committee found that Russell had instigated the fight, his claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Third, the court found that even on Russell's version of the events, he never told Smith why or from whom he needed protective custody, and because the attack started immediately after Russell says that he asked for protective custody, Smith had no chance to intervene. Fourth, Smith's testimony was more credible than Russell's, and it was corroborated by Hargrove's.

On appeal Russell challenges the *Heck* bar and three other rulings. We can ignore the argument about *Heck* because Russell loses on the merits anyway. He argues first that because he cannot read, the district court abused its discretion in not recruiting him counsel. But before a district court is required to consider recruiting counsel to assist a litigant in a civil case, the litigant must make a reasonable attempt to secure counsel for himself. *See Pruitt*, 503 F.3d at 654–55. The district court reasonably found that Russell

did not do so. His illiteracy, the court noted, did not prevent him from asking others to assist him in filing papers with the court. Likewise, it did not prevent him from asking someone to help him contact a lawyer.

Second, Russell argues that the district court should have ruled against the defendants because they knowingly destroyed a video recording of Russell pushing the emergency button to warn Smith of the impending attack. But nothing in the record suggests that the event was recorded, let alone that a recording was destroyed to hide evidence. *See United States v. Andreas*, 216 F.3d 645, 659–60 (7th Cir. 2000) (rejecting similar contention when no credible evidence suggested that evidence was destroyed). Downey testified that there was no video recording of this incident and that, in any case, video storage is regularly wiped clean for reuse after 30 days. In light of this uncontradicted testimony, nothing supports Russell's contention of the bad-faith destruction of evidence of the fight. *See Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428–29 (7th Cir. 2010); *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).

Third, Russell contends that the evidence does not support the verdict. He argues that the court should have excluded as hearsay the testimony of Hargrove, the inmate who said that Russell started the fight and stabbed Lomack. And in any case, he adds, since Hargrove is friends with Lomack, Hargrove was less credible than Bridges, the inmate who stated that Russell begged his attackers, "don't kill me."

The evidentiary ruling and verdict were proper. Hargrove's testimony was not hearsay because Hargrove testified about what he saw—Russell stabbing Lomack with a metal object—and personal observations are not hearsay. *See* FED. R. EVID. 801; *United States v. Haynie*, 179 F.3d 1048, 1051 (7th Cir. 1999); *see also United States v. Vosburgh*, 602 F.3d 512, 539 n.27 (3d Cir. 2010); *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 560–61 (11th Cir. 1998). The court was also entitled to decide which witnesses were more credible. *See Spurgin-Dienst v. United States*, 359 F.3d 451, 453 (7th Cir. 2004); *see also United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002). We will not disturb those credibility determinations unless the district court "has credited patently improbable testimony or its credibility assessments conflict with its other factual findings." *Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009). That is not the case here. The court permissibly reasoned that because Bridges did not see the altercation, Hargrove, who did see it, was more believable. In addition, because Smith gave credible testimony that Russell made no intercom call warning him of an attack, the court

properly ruled that the defendants did not unreasonably fail to protect him from a specific, known risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Tidwell v. Hicks*, No. 14-2365, 2015 WL 3937549, at *3 (7th Cir. June 26, 2015).

AFFIRMED.