NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2018[*]
Decided May 14, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 17-2787

| | |
|---|---|
| SHANNON PATTERSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 16-CV-942-JPS |
| | |
| RANDALL HEPP, et al., | J.P. Stadtmueller, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Shannon Patterson, a Wisconsin inmate, challenges only the district court's refusal to recruit counsel for him in his suit under the Eighth Amendment against officials at Fox Lake Correctional Institution. Because Patterson has not shown that a lawyer would have made a difference in his case, we affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

This case arises out of a fall that Patterson suffered at Fox Lake after tripping over a loose floor tile outside his cell. (For years, the floors at the prison had been deteriorating, with some tiles bulging unevenly up to a third of an inch off the ground.) As a result of the fall, Patterson says that he aggravated prior injuries from a car accident, including fractures in his ribs, left leg, and left scapula. Prison officials promptly dispatched him to an outside emergency room, where doctors noted only a large bruise on his leg. They x-rayed the leg, saw only his prior fractures, and prescribed ibuprofen.

While at Fox Lake, Patterson has received extensive treatment for his leg injury. He had frequent appointments with outside medical providers at the University of Wisconsin Hospital and Clinics and regularly saw a specialist who performed two surgeries in hopes of reducing the pain in his leg and increasing his mobility. After his fall, Patterson also began to complain of pain in his back and neck, but the prison's nurses and doctors found no objective evidence to corroborate those complaints. (Patterson, however, criticizes the examination by the prison's doctor, Charles Larson, as cursory.)

About a month after his fall, an X-ray of Patterson's back and shoulders revealed reduced space in one disk of his lower back but no acute injuries, aside from the scapula fracture for which Patterson repeatedly has declined surgery. Fox Lake's doctor, Richard Steliga, diagnosed Patterson with chronic pain syndrome and concurred with Dr. Larson that Patterson's current medications were appropriate. The following year, Patterson's leg specialist recommended that he try physical therapy for his back and neck, and Patterson did so. Several months later, he was given a transcutaneous electrical nerve stimulation unit to reduce his pain.

Patterson then filed this suit, alleging that Warden Randall Hepp and Superintendent John Maggioncalda had negligently or recklessly ignored the risks posed by the uneven prison floor and that various medical staff—Drs. Larson and Steliga, nurse practitioner Robert Frank, and two administrative employees of the medical unit—were deliberately indifferent to his pain and negligent with his treatment.

Patterson later received electromyography tests that revealed mild, chronic neuropathy in his left leg but no evidence of nerve damage in his upper body. On the

advice of Patterson's leg specialist, the prison doctors sought to have Patterson see a spine specialist, but by the time defendants moved for summary judgment he had not yet seen one.

Two months before the close of discovery, Patterson requested counsel based on his legal inexperience, his difficulty concentrating (caused by a head injury from his pre-incarceration car accident), and his need to rely on a jailhouse lawyer for help in drafting legal documents. The court denied the request because Patterson had not shown that his case was so complex that he could not adequately litigate it despite any mental impairments. The court acknowledged Patterson's reliance on the jailhouse lawyer, but determined that he had not shown he was incapable of litigating alone.

Days before the defendants moved for summary judgment, Patterson again asked the court to recruit him counsel based on a recent psychological exam diagnosing him with "mild neurocognitive disorder," as well as an affidavit from the jailhouse lawyer attesting to Patterson's difficulties concentrating and remembering. The court denied this motion too, noting the psychiatrist's conclusion that Patterson was "quite clear in his thought process" and able to articulate his thoughts, if given time.

The court proceeded to grant defendants' motion for summary judgment. With regard to Patterson's claims about the floor condition, the court determined that the prison's loose tiles were not dangerous enough to violate the Eighth Amendment and that Hepp and Maggioncalda were entitled to immunity for any state-law negligence claim. On Patterson's Eighth Amendment claim relating to his post-fall medical care, the court concluded that he had not provided evidence for a jury to find that the prison's staff was deliberately indifferent to his pain. The court dismissed Patterson's state-law medical malpractice claim because he did not produce any expert testimony that his treatment fell below the applicable standard of care. Finally the court denied another of Patterson's requests for counsel—his third—which he had filed at the close of briefing on the summary judgment motion. He then sought reconsideration, asking a fourth time for the assistance of counsel, but that motion was also denied.

On appeal Patterson challenges only the first two denials of his request for counsel. The district court abused its discretion in denying his requests, he says, because the court disregarded his myriad limitations—his inability on his own to collect and present complex medical evidence; his reliance on the assistance of a jailhouse lawyer to prepare his case; and his concentration lapses lingering from his brain injury.

In support he cites *Jackson v. Hepp*, 558 F. App'x 689 (7th Cir. 2014), a prisoner's-rights case in which we vacated summary judgment for defendant officials because the plaintiff, who had been taking psychiatric medications that made it difficult for him to focus, needed help from counsel to address gaps in the evidence.

After a district court finds that a *pro se* litigant has tried to find a lawyer, it must ask "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (*en banc*). We review the court's decision not to recruit counsel for an abuse of discretion. *Id.* at 658. But even if the court has abused its discretion, we will not reverse unless the appellant can show that he was prejudiced by his lack of counsel. See *Tidwell v. Hicks*, 791 F.3d 704, 709 (7th Cir. 2015). In making this determination, we ask if there is "a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." *Pruitt*, 503 F.3d at 659 (emphasis omitted).

We need not consider here whether the district court mishandled Patterson's first two motions for counsel, because he has not shown that the court's decision prejudiced him. No lawyer could help him overcome the district court's proper determination that the uneven floor at Fox Lake was not a danger of constitutional magnitude and that Hepp and Maggioncalda were immune from damages claims under Wisconsin law. See *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014) ("Federal courts consistently have adopted the view that slippery surfaces … in prisons, without more, cannot constitute a hazardous condition of confinement."); *Brown v. Acuity*, 833 N.W.2d 96, 106 (Wis. 2013) (describing scope of discretionary immunity under Wisconsin law).

Nor do we see a reasonable likelihood that a lawyer could have avoided summary judgment on Patterson's medical claims. To show medical malpractice, he would have needed an expert to testify that the treatment he received—treatment on which the emergency-room staff, the prison staff, and the outside specialist all concurred—fell below the standard of care. And for the constitutional claim, the expert would have to opine that the treatment deviated so far from this standard that the doctors' deliberate indifference could be inferred. See *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (*en banc*), *cert. denied*, 137 S. Ct. 1578 (2017). Mere disagreement with the defendants' diagnostic and treatment decisions would not be enough for either claim. See *id.*; *Nowatske v. Osterloh*, 543 N.W.2d 265, 275–76 (Wis. 1996); *Francois v. Mokrohisky*, 226 N.W.2d 470, 472 (Wis. 1975). Given the extensive treatment Patterson received here, finding such an expert would at best be unlikely.

Finally, Patterson's case is distinguishable from *Jackson*. The doctors in *Jackson* had ignored a specialist's instructions to clean Jackson's post-surgical wounds, and the wounds eventually became severely infected. See 558 F. App'x at 691–92. Such disregard for treatment advice can be a strong hint of deliberate indifference. See, e.g., *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). In contrast, Patterson's doctors generally implemented the specialist's recommendations. And on the one occasion when they did not do so—when they did not at first provide Patterson softer shoes as suggested—they conferred with the specialist and located shoes that met his recommendation and satisfied the prison regulations. The thorough treatment Patterson received shows that his claims failed not for lack of his own abilities (or for those of the jailhouse lawyer) but because nothing he alleged suggested malpractice, let alone deliberate indifference. See *Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008).

AFFIRMED