NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 7, 2019[*]
Decided January 10, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1638

| | |
|---|---|
| TRAVIS D. WILLIAMS, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the |
| | Eastern District of Wisconsin. |
| *v.* | |
| | No. 14-C-1594 |
| REBECCA SWENSON, et al., | William C. Griesbach, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Travis Williams, a Wisconsin inmate, sued medical and nonmedical jail officials for violating the Eighth Amendment by not giving him the treatment that he wanted, though he refused to let medical staff fully examine him. Both sides moved for summary judgment, and the district court entered judgment for the defendants. The judge correctly ruled that Williams has not furnished evidence of a constitutional

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

violation. The medical defendants provided a reasonable, alternative approach to his preferred treatment plan, and the nonmedical defendants were not personally involved in his medical care. Thus, we affirm.

On appeal from rulings on cross-motions for summary judgment, we view each motion separately and draw all reasonable inferences in favor of the nonmoving party. *Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 847 (7th Cir. 2016). We turn first to the defendants' motions for summary judgment.

The relevant events concern three medical issues that arose during the short time that Williams was housed at the Kenosha County Pretrial Facility. The first issue involves pain medication. Two days before arriving at Kenosha, Williams was at Dodge Correctional Institute, where a doctor prescribed ibuprofen three times a day for his pain. Once at Kenosha, Dr. Karen Butler, a doctor for the pretrial facility, reduced that dosage to twice per day. Williams complained to a nurse about the reduction, and she replied that to raise the dosage, he would first have to be medically examined. Williams refused to be examined. Based on his refusal, Officer Mark Uelman asked him to sign a release from medical responsibility, which Williams also refused to do. The medical staff later offered to increase his dosage to three times a day for two weeks but said that an extension would require a doctor's examination. Williams eventually allowed Dr. Butler to see him, but he refused to submit to blood work to better evaluate his health. Unable to diagnose the cause of Williams's pain, Dr. Butler changed his prescription from ibuprofen to gabapentin to minimize the adverse health risks associated with chronic use of ibuprofen. Williams says gabapentin was ineffective.

Williams also wanted lactulose for constipation, another drug that he had been prescribed before his transfer to Kenosha. Dr. Butler prescribed lactulose for two weeks, but as with the pain medication, she said that he needed to be examined before she would extend the prescription further. Williams again refused to be examined, and his prescriptions ran out about a month after he brought this suit.

Williams had also previously received a wheelchair for long distances and a cane for daily use. At Kenosha he told medical staff that he still needed a wheelchair because of his limited ambulation. To evaluate his assertion, Dr. Butler placed Williams on a 72-hour "activity log." During that time, he was observed moving around his cell, bending, walking, and standing without difficulty. He was checked two more times up close, but this too revealed no ailments supporting Williams's account of limited

ambulation. He was allowed continued use of a cane until he struck another inmate with it.

Dissatisfied with his medical care, Williams submitted multiple grievances, and when these did not resolve his concerns, this lawsuit followed. In it Williams raises the claims that Kenosha's medical officials violated the Eighth Amendment by not prescribing medicine that he desired and that nonmedical officers improperly ignored his grievances and medical needs. The judge entered summary judgment in favor of the defendants. He concluded that medical staff reasonably exercised medical judgment and that no nonmedical defendant was personally involved in a constitutional deprivation. Williams's appellate brief is difficult to parse, but we understand him to challenge these conclusions.

Williams argues first that he supplied evidence that the medical defendants violated the Eighth Amendment by refusing to follow the treatment prescribed by his previous doctor. But as the judge correctly reasoned, Williams's contention amounts to a disagreement over reasonable, alternative treatments, which is insufficient to support an Eighth Amendment claim of deliberate indifference to a health condition. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Williams assumes that the Kenosha medical staff should have known, without medically examining him, that his past prescriptions were the only proper treatment for his conditions. But he does not offer any evidence suggesting that their alternatives—a desire to examine him before continuing those previous dosages and cancelling a wheelchair after he showed full mobility—were reckless exercises of medical judgment. And since he refused to be fully examined, a jury could not find that the treatment he received—limited or alternate pain relievers and short-term constipation medicine—was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

William raises two arguments regarding the nonmedical defendants and both are meritless. He first complains that jail officer James Parker violated the Eighth Amendment by ignoring his grievances. But Williams points to no evidence that he directed any of his grievances to Parker. Without any personal connection to these grievances, Parker cannot be liable under 42 U.S.C. § 1983. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Second, he argues that Uelman, the officer who asked Williams to sign the medical release after he refused to be examined, violated the Eighth Amendment by withholding medicine from him to retaliate for Williams's refusal. But

no evidence contradicts Uelman's assertion that he had no control over Williams's medications.

Because the judge properly granted the defendants' summary-judgment motions on the Eighth Amendment claim, it necessarily follows that the judge properly denied Williams's cross-motion for summary judgment.

One final matter. Williams challenges the district court's denial of his motions to allow him to speak in support of his motion for summary judgment and to recruit counsel. But the court did not abuse its discretion in denying either motion. *See Perotti v. Quinones*, 790 F.3d 712, 721 (7th Cir. 2015); *Pruitt v. Mote*, 503 F.3d 647, 658 (7th Cir. 2007) (en banc). The judge explained that oral argument was not necessary given the extensive briefing. On the motion to recruit counsel, the judge reasonably determined that Williams's previous filings demonstrated that he could adequately represent himself. And even if the judge were wrong about that, we would reverse only if Williams could show that he was prejudiced by that decision. But he has not articulated what material evidence a lawyer's participation might have unearthed. *See Tidwell v. Hicks*, 791 F.3d 704, 709 (7th Cir. 2015).

We have considered Williams's other arguments, and none has merit.

AFFIRMED